Mr. Justice Dayis
delivered the opinion of the court:
It appears by the findings of the Court of Claims in this case that Cadwallader Wallace, being’ the owner and holder of unsatisfied military bounty-land warrants, issued by the State of Virginia for the services of her troops on the Continental establishment in the war of the Revolution, located them, in 1838 and 1839, on lands which he claimed to be within the district reserved by Virginia to satisfy warrants of this class in her deed of cession to the United States of March 1,1784.
*134 The lands on which the attempt was made to locate these warrants had, long before that time, been disposed of to other parties, and the Government declined to recognize the validity of Wallace’s proceedings, and refused to issue patents to him. Wallace has since then died, and .his executor claims that the-Government wrongfully appropriated the lands on which these warrants were laid, and as he cannot get the lands themselves, he should be paid the amount of money received into the Treasury from their sale, with interest, or, in lieu thereof, have land-scrip issued to him.
The court below took a different view of the obligations of the Government, and decided adversely to the claim on its merits. It is insisted, however, by the counsel for the United States, that the Court of Claims had no jurisdiction to hear a case of this character; and, if this position be well taken, we are relieved of the necessity of deciding the merits of the controversy.
A short history of the nature of this claim, and the grounds ■ on which it is based, is necessary to a proper understanding of the point of jurisdiction. The State of Yirginia, during the Revolutionary War, promised bounty-lands to her troops on Continental establishment, and at an early day set apart for their benefit a tract of country within the limits of the present State of Kentucky, ‘which it was supposed at the time would be sufficient for the purpose. Recognizing, however, that this reservation might prove insufficient to satisfy the claims of these troops, Yirginia, in ceding to the United States the territory beyond the Ohio River, reserved all the lands lying between the Scioto and Little Miami Rivers to supply any deficiency of lands in the Kentucky district. It was very soon manifest that the apprehended deficiency existed, and the second reservation, therefore, became operative. In order to ascertain the limits of this reservation, it was necessary to find the sources of these two rivers, and to run the line between them. The execution of this object has been the occasion of much difficulty, and the cause of frequent legislation by Congress. Two lines were run by different surveyors — one by Ludlow and the other by Roberts. Ludlow’s line excluded the land on which the claimant located his entries, while Roberts’s includes them. It is unnecessary, for the purpose of this suit, to trace the history of these lines, or to show which is scientifically correct. It is enough to say *135 that Congress, in 1818, (3 Stat. L., p. 424,) established Ludlow’s line as the true boundary, and excluded entries upon the west side of it, where the entries in dispute were made in satisfaction of the Virginia military bounty-land warrants.
The claimant insists there was no power to do this, as Virginia did not assent to this action on the part of Congress, and as it is demonstrable that this line does not include all the lands between the two rivers.
If this position be correct, this claim is based on the theory that the United States has violated the trust contained in the deed of cession of the Northwestern Territory, and is bound in good conscience to furnish compensation to the Virginia beneficiaries who suffer by this misconduct. This makes a case for the interposition of a court of equity, and if it were a controversy between two private suitors it would have to be settled there, for a court of law could not afford the proper mode and measure of relief. But the Court of Claims has no equitable jurisdiction given it, and was not created to inquire into rights in equity set up by claimants against the United States. Congress did not think proper to part with the consideration of such questions, but, wisely, reserved to itself the power to dispose of them.
Immunity from suit is an incident of sovereignty, but the Government of the United States, in a spirit of great liberality, waived that immunity in favor of those persons who had claims against it which were founded upon any law of Congress or regulation of an Executive Department, or upon any contract with it, express or implied, and gave the Court of Claims the power to hear and determine cases of this nature. (10 Stat. L., p. 612.)
The inquiry, then, arises whether the present case, in view of this limited jurisdiction, is one that the Court of Claims had a right to consider. The answer to this question seems to us of easy solution. It is not pretended that there was any regulation of a Department to justify the entries in dispute, and it is certain, instead of having a law of Congress to rest upon, they were made in violation of the whole course of legislation by Congress on the subject. Congress has not only, in fixing the boundary-line of the reservation, excluded these entries, but has also limited the time in which tbe holders of warrants of the class in question should have the right to locate them, and, in addition to this, has forbidden their location on tracts of *136 land for which patents had been previously issued, or which had been previously surveyed.
See the following acts of Congress: March 23,1804, 2 Stat. L., p. 274 j March 2,1807, 2 Stat. L., p. 425; April 2,' 1818, 3-Stat. L., p. 423; March 1, 1823, 3 Stat. L., p. 772; July 7,1838, 5 Stat, L., p. 262.
As the land in question had been previously patented to individuals or granted for the use of schools, it follows that the attempt on the part of the claimant to locate his warrants on them was contrary to law, and that the claim which he now makes for compensation, because of the failure of this proceeding, cannot be said to be founded on a law of Congress. Nor can it be said to be based on a contract in the sense of the law conferring jurisdiction on the Court of Claims. That court was authorized to enforce legal rights and obligations, but it could not proceed further, and judge of the equities between the citizen and his Government. In the absence of legislation by Congress the holder of a Virginia military bounty-land warrant can have no legal right against the United States for compensation, on the allegation that the Government has wrongfully appropriated to other uses the lands ceded for his benefit.
It is only a contract authorized by law that the Court of Claims can consider, and, as there is no law of Congress on this subject, there is nothing on which that court could base a judgment against the United States if, in the opinion of that tribunal, it had not fulfilled its duties toward the beneficiaries under the Virginia deed of cession. The liability of the Government, if at all, arises out of the breach of an accepted trust, and that liability cannot be enforced at law. The claimant is in no better position because the Government is the trustee than he would be if a private person occupied that relation, and it is-very clear, if such were the case, that a court of equity would alone have the power to deal with him.
As the Government has not thought fit to allow itself to be sued in the Court of Claims on equitable considerations, it follows that the remedy of the claimant, if any now exist, is with Congress.
The judgment of the court below is reversed, and the case is remanded to that court with directions to dismiss the petition for want of jurisdiction.