**WORK, Secretary of the Interior, v. UNITED STATES ex rel. O'DONNELL.**

No. 4561.

Court of Appeals of District of Columbia.

Submitted October 4, 1927.    Decided November 7, 1927.

1. **Mandamus ⟨key⟩85—Mandamus will lie to require Secretary of the Interior to certify lands for patent to state under Swamp Land Act, where he found that lands were swamp lands (43 USCA §§ 982–984, 987).**

Where Secretary of the Interior found that certain lands were swamp lands, within Act Sept. 28, 1850 (43 USCA §§ 982–984; Comp. St. §§ 4958–4960), and Act July 23, 1866, as carried into Rev. St. § 2488 (43 USCA § 987; Comp. St. § 4964), mandamus will lie to compel him to certify them for patent to state, since such act is ministerial only, and leaves question of title to be disposed of by courts of territorial jurisdiction in which land is situated.

2. **Public lands ⟨key⟩60—Finding that land was swamp land carries approval of survey, which was condition precedent to passing on character of land (43 USCA §§ 982–984, 987).**

Finding of Secretary of the Interior that lands were swamp lands, within Act Sept. 28, 1850 (43 USCA §§ 982–984; Comp. St. §§ 4958–4960), and Act July 23, 1866, as carried into Rev. St. § 2488 (43 USCA § 987; Comp. St. § 4964), carries with it final approval of survey, which was condition precedent to passing on character of land, and which will be presumed to have been held in suspension to await Secretary's decision on character of land at date of grant.

3. **Public lands ⟨key⟩58—Grant of swamp land to state was in præsenti (Swamp Land Act 1850 [43 USCA §§ 982–984]).**

Under terms of Swamp Land Act of 1850 (43 USCA §§ 982–984; Comp. St. §§ 4958–4960), grant to states of swamp and overflow lands was present grant, under which title attached, as of date of act, to all lands which were found, after survey and designation by Secretary of the Interior, to have passed to state.

4. **Public lands ⟨key⟩58—State may be entitled to patent under Swamp Land Act, without regard to controversy as to title of United States (43 USCA §§ 982–984, 987).**

Issuance of patent to state under Act Sept. 28, 1850 (43 USCA §§ 982–984; Comp. St. §§ 4958–4960), and Act July 23, 1866, as carried into Rev. St. § 2488 (43 USCA § 987; Comp. St. § 4964), determines no legal or equitable right of United States in premises, so that state may be entitled to patent, without regard to controversy between United States and individual as to title.

5. **Public lands ⟨key⟩108—Discretion of Secretary of the Interior relative to disposition of public lands will not be controlled by courts.**

Discretion of Secretary of the Interior in matters relating to sale and disposition of public lands under general land laws of United States is very broad, and such discretion will not be controlled by courts.

6. **Public lands ⟨key⟩60—Determination of quality of land is only discretionary authority vested in Secretary of the Interior under Swamp Land Grant Act (43 USCA § 987).**

Under Act July 23, 1866, as carried into Rev. St. § 2488 (43 USCA § 987; Comp. St. § 4964), determination by Secretary of the Interior, after approved survey, of quality of land claimed as swamp land, is only discretionary authority vested in him; every other duty being mandatory.

Appeal from the Supreme Court of the District of Columbia.

Mandamus by the United States, on the relation of James E. O'Donnell, against Hubert Work, as Secretary of the Interior. A peremptory writ was issued, and respondent appeals. Affirmed.

G. P. Barse and N. M. Lacy, both of Washington, D. C., for appellant.

Edmund Burke, J. G. Jaeger, and S. H. Rourke, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. A peremptory writ of mandamus was issued by the court below to compel the appellant, Secretary of the Interior, to certify to the state of California for patent certain lands, under the Act of Congress of September 28, 1850 (9 Stat. 519 [43 USCA §§ 982–984; Comp. St. §§ 4958–4960]), alleged to be swamp and overflow in character.

The lands were surveyed in 1856 by authority of the state of California, and identified under the survey as "survey 34" containing 164.55 acres. Appellee, relator below, James E. O'Donnell, claims title to this tract of land through mesne conveyances from the state of California. No certificate or other evidence of title has been issued by the United States to the state; however, in proceedings brought in the Department of the Interior to secure recognition of the claim of the state to these lands, the Secretary, in a decision dated January 10, 1925, held that "the body or strip of land known as survey No. 34 was, at the date of the swamp land grant of September 28, 1850, swamp in character; that it was above the ordinary high-water mark and formed a contiguous body attached to the higher portion of Mare island. Accordingly it is hereby declared to be swamp land, and, as such, subject to patent to the state of California, in the absence of other sufficient reasons."

This finding was in response to a writ of

mandamus issued by the Supreme Court of the District of Columbia in a former suit, brought by this relator, requiring the Secretary to determine whether the lands in question were swamp in character at the date of the swamp land grant. The Secretary, however, refused to certify the lands for patent to the state; hence the present suit.

The defense is now interposed that the land in question is a part of the Mare Island Navy Yard, and that title to this land was acquired by the United States by purchase from parties who had derived title from one Victor Castro, who claimed under a Mexican grant at the time of the cession of California by Mexico to the United States. The claim of Castro was presented by his grantees, George W. Bissell and William H. Aspenwall, to the Board of Land Commissioners, created by the Act of Congress of March 3, 1851 (9 Stat. 631), to ascertain and settle private land claims in the state of California, and was confirmed by the commissioners. On January 4, 1853, the grantees of Castro conveyed to the United States, for the consideration of $83,491, the following-described property: "All that tract of land and island called and known as Mare Island, in the bay of San Francisco, as recently surveyed by the board of officers of the United States, sent to California for the selection of a site for the navy yard there. including all the tule or low land, and marsh belonging to the same, or which has ever been reputed or claimed to belong to the same, and all the waters, harbors, bays, creeks, and other waters, privileges, benefits, advantages, tenements, hereditaments, and appurtenances thereunto belonging."

In May, 1910, one Sawyer, a predecessor in title to relator, brought suit in ejectment in the United States District Court for the Northern District of California, claiming to be the owner of the land included in survey No. 34, making as defendant in said case one Osterhaus, then a rear admiral in the United States Navy and commandant at Mare Island Navy Yard. A judgment was entered against Sawyer. Sawyer v. Osterhaus et al. (D. C.) 212 F. 765.

It also appears that, in a suit instituted in the Circuit Court of the United States for the Northern District of California in 1887, against the then commandant of the navy yard, to recover Mare Island, the entire Castro grant and all proceedings under it were held to be so steeped in fraud as to be totally null and void. Bouldin v. Phelps (C. C.) 30 F. 547. It is also insisted that the courts in San Francisco Sav. Union v. Irwin (C.

C.) 28 F. 708, affirmed 136 U. S. 578, 10 S. Ct. 1064, 34 L. Ed. 540, held that the land in question was never a part of the Castro grant and was not included in the deed to the United States.

[1] The court below refused to consider these matters of defense interposed by the government, on the theory that, the Secretary having found that the lands were swamp lands, nothing remained for him to do but the mere ministerial act of certifying them for patent to the state of California, leaving the questions of title to be disposed of by the courts of the territorial jurisdiction in which the land is situated. It is insisted, however, by counsel for the government that the duty of certification is not imposed upon the Secretary until he has first determined whether or not these were lands of the United States at the time of the passage of the Swamp Land Act; in other words, that the Secretary must pass upon the validity of the Castro grant.

The position assumed by the court below is correct. The fourth section of the Act of Congress of July 23, 1866, 14 Stat. 219, as carried into R. S. § 2488 (43 USCA § 987; Comp. St. § 4964), provides as follows: "It shall be the duty of the Commissioner of the General Land Office, to certify over to the state of California as swamp and overflowed lands, all the lands represented as such upon the approved township surveys and plats, whether made before or after the 23d of July, 1866, under the authority of the United States." The survey of the land in question was made by the Surveyor General of the United States for the state of California prior to August 17, 1923, and returned by him as swamp and overflow at the date of the grant to the state. Thereupon the Secretary accepted the return and refused to approve or pass upon the character of the land until the decision in the Osterhaus Case was impeached. This status continued until the Secretary, in response to the mandate of the Supreme Court of the District of Columbia, declared the land swamp and overflowed at the date of the grant.

[2] This finding unquestionably carries with it the final approval of the survey, which was a condition precedent to passing upon the character of the land, and which will be presumed to have been held in suspension to await the decision of the Secretary on the character of the land at the date of the grant. In these circumstances, we think nothing remains to be done, but the mere ministerial act of certifying for patent the lands to the state of California.

[3] It is settled law that, under the terms of the Swamp Land Act of September 28, 1850, the grant to the states of swamp and overflow lands within their borders was a present grant, and that title attached, as of the date of the act, to all such lands as were found after survey and designation by the Secretary to have passed to the state. The scope of the Swamp Land Grant Act, the act of 1866, supra, and the duties therein imposed upon the Commissioner of the General Land Office to certify for patent lands on which the surveys have been approved, are comprehensively reviewed and clearly interpreted in the early cases of Wright v. Roseberry, 121 U. S. 488, 7 S. Ct. 985, 30 L. Ed. 1039, and Tubbs v. Wilhoit, 138 U. S. 134, 11 S. Ct. 279, 34 L. Ed. 887.

In the Tubbs Case the application to have the lands certified to the state was refused by the Commissioner of the General Land Office, not because of any alleged or supposed error in the survey, but for the reason alleged that the department had already divested itself of authority by the issue of a patent to the plaintiff, a homesteader. In holding that, notwithstanding a patent had been issued, it was the duty of the Commissioner to certify over to the state the land in question, the court said:

"Whether the township plat be considered as approved by the action of the Surveyor General, or by the subsequent recognition of its correctness by the Commissioner of the General Land Office, when approved, the duty of the Commissioner to certify over to the state the lands represented thereon as swamp and overflowed was purely ministerial. He could not defeat the title of the state by withholding such certificate, nor could he add to the title by giving it. Its only effect would have been to facilitate the proof of the vesting of the title in the state by its additional recognition of the land as that covered by the congressional grant of 1850. It would not have added to the completeness of the title. A strange thing it would be if the refusal of an officer of the government to discharge a ministerial duty could defeat a title granted by an act of Congress, and enable him to transfer it to parties not within the contemplation of the government."

[4] It follows that the court below was right in laying aside all consideration of the controversy between relator and the United States as to title, since the mere issuance of patent to California determines no legal or equitable right of the United States in the premises. It merely gives relator his day in court. As was said by Mr. Justice Miller in United States ex rel. McBride v. Schurz, 102 U. S. 404, 26 L. Ed. 167:

"If the relator in this case cannot obtain his patent, he is wholly without remedy. He cannot sue the United States, in whom is the title, in the absence of the patent; for the United States can be sued in no other court than the Court of Claims, and we have decided that that court has no jurisdiction in such a case. Bonner v. United States, 9 Wall. 156 [19 L. Ed. 666]. There is no one else to sue, for the title is either in the relator or the United States. It may be many years before the city of Grantsville, the party now claiming against him, will get a patent, and it may never do so. The relator is, therefore, utterly without remedy, if the land be rightfully his, until he can obtain possession of this evidence of his title. On the other hand, when he obtains this possession, if there be any equitable reason why, as against the government, he should not have it, if it has been issued without authority of law, or by mistake of facts, or by fraud of the grantee, the United States can, by a bill in chancery, have a decree annulling the patent, or possibly a writ of scire facias. If another party (as the city of Grantsville) is, for any of the reasons cognizable in a court of equity, entitled, as against the relator, to have the title which the patent conveys to him, a court of chancery can give similar relief to the city as soon as the patent comes into his possession, or perhaps before; so that it is plain that by nonaction of the Land Department the legal rights of the parties may remain indefinitely undecided, and those of the relator seriously embarrassed or totally defeated, while the delivery of the patent, under the writ of mandamus, opens to all the parties the portals of the courts where their rights can be judicially determined."

[5, 6] Unquestionably the discretion of the Secretary in matters relating to the sale and disposition of public lands under the general land laws of the United States is very broad, and that discretion will not be controlled by the courts; but the swamp land grant is, technically speaking, not a part of the public land law of the United States. It was an express grant by the United States to the states. A grant in præsenti, dependent upon the determination, after approved survey, by the Secretary of the quality of the land. This is the only discretionary authority vested in the Secretary under the act of 1866. Every other duty is mandatory. The finding that the lands in question were swamp lands

at the date of the grant presumes approval of the survey, since such approval is a condition precedent to a decision as to the character of the land. With the finding, therefor, the authority and discretion of the Secretary is exhausted, and nothing remains but the mandatory duty of certifying the lands for patent to the state.

The judgment is affirmed, with costs.