**STAVROS v. UNITED STATES.**
No. 20131.

District Court, W. D. Washington, N. D.
June 27, 1932.

George E. Flood and George E. Mathieu, both of Seattle, Wash., for plaintiff.

Anthony Savage, U. S. Atty., Tom De Wolfe, Asst. U. S. Atty., and Lester E. Pope, Chief Atty., U. S. Veterans' Administration, all of Seattle, Wash., for the United States.

JAMES ALGER FEE, District Judge (sitting by special assignment).

Plaintiff brought this action against the United States upon the theory that he has become entitled to automatic insurance under the War Risk Insurance Act. After setting up the facts in the complaint that he was inducted November 1, 1917, mustered into serv-ice November 6, 1917, and discharged November 11, 1917, and was thereby entitled to war risk insurance, it is alleged: "That prior to the said date of discharge from the service, to wit, November 11, 1917, the plaintiff contracted chronic, active and pulmonary tuber-culosis, and tubercular arthritis of the spine, hips and legs, and because of said diseases was discharged from the service on the said date of November 11, 1917, by a Board of Medical Survey as unfit for further military duty."

The government denied generally the allegations of the complaint.

The case opened before a jury but, upon stipulation of the parties in court, was finally submitted to the court for determination without intervention of the jury.

Peter Stavros suffered an onset of tuberculosis periostatis of the upper end of the shaft and greater trochanter of the right femur in January, 1917, for which he received treatment.

On his draft registration card in June, 1917, he listed his address as "Riverview Hospital, Raymond, Wash.," and in answer to the question 7 on this card, "What is your present trade, occupation or office?" answered, "Not employed—sick." And in answer to question 12, "Do you claim exemption from draft (specify grounds)?" replied, "Yes—tubercular."

On September 21, 1917, he was examined by the local draft board, where the record is as follows:

"PHYSICAL EXAMINATION UNDER THE SELECTIVE SERVICE ACT OF MAY 18, 1917.

"Stavros—Pete

"STATEMENT OF PERSON EXAMINED

"Have you found that your health and habits in any way interfere with your success in civil life; if so, give details. YES.

"Do you consider that you are sound and well? If not, write details. NO.

"Have you ever been under treatment in a hospital or asylum? If so for what treatment? YES. IN HOSPITAL TEN WEEKS FOR TUBERCULOUS PERIOSTITIS OF FEMUR.

"I certify that the foregoing questions and answers thereto have been read over by me; that I fully understand the questions and that my answers are correctly recorded, and true in all respects.

"I further certify that I have been fully informed and know that making or being a party to making any false statement as to my fitness for military service renders me liable to punishment by imprisonment.

"PETE STAVROS.
"GEO. A. TRIPP, M.D.,
"Examining Physician.

"Place: South Bend, Wash.
"Date: Sept. 21, 1917."

(The words in capitals are handwriting on the original.)

The examining physician apparently intended first to certify him as physically fit, for his record reads as follows:

"PHYSICAL EXAMINATION BY EXAMINING PHYSICIAN OF LOCAL BOARD.

"(Person under examination stripped.)

"REMARKS: DISCOLORATION OF SKIN OVER RIGHT HIP.

"I certify that I have carefully examined the person named on the first page hereof and have carefully recorded the results of the examination and that it is my judgment and belief that he is 'physically qualified for military service.' ~~physically deficient and not physically qualified for military service by reason~~ OF INFLAMMATION OF LEG.

"Geo. A. Tripp, M.D.,
"Examining Physician.

"Place: South Bend, Wash.
"Date: 9/21/17."

(The words in capitals are in handwriting on the original exhibit.)

Upon the certificate of one Dr. McClennon that he had had Pete Stavros under treatment for tuberculosis of the right femur which "seems to be pretty well arrested at the present time; it has not been quiescent for sufficient time to consider it cured," the examining physician contents himself by indorsing a recommendation that Stavros be given to January 1, 1918, to "make further recovery." But upon this record, on November 1, 1917, plaintiff was ordered to Camp Lewis, Wash., where, upon November 2, 1917, he was in hospital suffering from "tuberculosis," which "existed prior to service" and was not received "in line of duty." Plaintiff testified that he was enlisted, and then put to digging ditches and drilling. He complained again later but was sent back to duty, and was discharged on November 9, 1917, as unfit for military duty on account of tuberculosis of the right lung and right hip. Subsequently he was operated on for his hip

in January, 1918. However, he was again called to Camp Lewis in April, 1918, but failed to report until August 15, 1918, and on September 12, 1918, was given a discharge from draft and a surgeon's certificate of disability on account of tuberculosis. His subsequent history is replete with examinations by government doctors, treatment and offers of treatment in government hospitals, payments of compensation, and attempts to rehabilitate. The evidence bears out plaintiff's claim that he was, prior to November 11, 1917, permanently and totally disabled.

■■ The court, however, finds that plaintiff has failed to prove that he became totally and permanently disabled between November 1, 1917, and November 11, 1917, and further that the affirmative proof and the admissions of plaintiff show that he was permanently and totally disabled from some date in 1917, before his entry into the military service of the United States. These statements and admissions of plaintiff were, of course, competent evidence, and support the findings. Sprencel v. U. S. (C. C. A.) 47 F.(2d) 501, 507.

The plaintiff never applied for, during either period of e. istment, a contract of war risk insurance. None was ever issued to him at any time. No deductions were made from his pay for premiums. Nor did he ever make any payments. Notwithstanding these facts, plaintiff claims he automatically became entitled to a policy and payment thereof under the following provision: "Any person in the active service on or after the 6th day of April, 1917, and before the 11th day of November, 1918, who, while in such service and before the expiration of one hundred and twenty days * * * after entrance into or employment in the active service, becomes or has become totally and permanently disabled, or dies or has died, without having applied for insurance, shall be deemed to have applied for and to have been granted insurance." Section 401 of Act of Oct. 6, 1917 (as amended by Act Dec. 24, 1919, § 12, 41 Stat. 374).

If one compares the provisos of the enactment with the allegations of the complaint, it is patent plaintiff has not stated a cause of action against the United States. An allegation that "prior to November 11, 1917," he was permanently and totally disabled does not set up that plaintiff "while in said service" became so disabled. This interpretation, moreover, is strengthened by the fact that this subject clause controls the verbs "becomes or has become" which appear in

the disjunctive, inasmuch as the act passed on October, 1917, the seventh month of our participation in the war, for the purpose only of protecting the families of those who had already been lost or injured.

Under the act plaintiff must plead and prove that he became permanently and totally disabled between November 1, 1917, and November 9, 1917, inclusive, for the burden of proof was upon the plaintiff to establish a case within the purview of the legislative declaration.

The plaintiff's admissions and declarations showed that he was using the plea of permanent and total disability in November, 1917, to prevent service under the colors, and after he had properly accomplished this purpose, he now relies upon the same permanent and total disability to impel a generous government, which has already furnished him with medical care, training, and long months of compensation, to pay him because he was unfit physically when his country called.

Plaintiff did not prove he was entitled to a policy. Even in the event the policy had issued, plaintiff would have been required to plead and prove that he became permanently and totally disabled between the date he got his policy and the date of discharge.

The policies issued contained the following provisions:

"The United States of America * * * hereby insures from and after the ——— day of ———, 19—, John Doe * * *, for the principal amount of ——— payable:

"To the insured if he/she, while this insurance is in force, shall become totally and permanently disabled * * *. If the insured became totally and permanently disabled before the policy was applied for, it shall nevertheless be effective as life insurance but not as insurance against such disability."

The position of plaintiff is that since the United States did not plead an affirmative defense and prove it by a preponderance of the evidence, plaintiff should prevail. Cases arising under commercial policies are quoted, showing that the insurer must plead and prove that the insured came within an excepted risk in order to defeat recovery. These opinions are inapplicable. Of course, if the insurance is against death, no case requires the insurer to plead and prove affirmatively that death did not occur to the insured. If a fire insurance policy issued on a certain building, the insurer would not be required to establish that the building, unknown to either party, had burned in part before the date of coverage set in the policy. Insurer can defend upon the ground that the loss occurred before the policy issued, or after it lapsed, and insured, in order to recover, must show that the fire destroyed the particular building between the date the policy issued and the date it lapsed. Similarly plaintiff must prove here that he became permanently and totally disabled between the date the insurance took effect and the date it lapsed.

In other words, the United States insured against future risk and casualty yet to come. It did not assume the indemnification of the soldier for disease and accident which had already rendered him a liability rather than an asset. It placed no premium upon those already unfitted for military duty. Loss of life was patently a future risk. But if the soldier were permanently and totally disabled before the contract of insurance was made, then the loss as to him had already occurred.

The express contract which the plaintiff made, therefore, insured his life but did not insure him against permanent and total disability, unless such a catastrophe overtook him during the life of the contract.

This has been the holding of the Circuit Court of Appeals of this circuit on every occasion when the question has been presented. It was first decided by the court speaking through Judge Rudkin in Jordan v. U. S., 36 F.(2d) 43, 44, 73 A. L. R. 312:

"While the complaint alleged the issuance of a single policy, and the answer admitted the allegation, it appears from the instructions of the court that there were in fact two policies, for $5,000 each, the first bearing date March 11, 1918, and the second June 1, 1918; but no complaint is made because of the variance. The court instructed the jury, in effect, that if the plaintiff suffered from epilepsy and was totally and permanently disabled between the date of his entry into the military service of the United States and the dates of the issuance of the policies, their verdict should be for the defendant. The jury returned a general verdict for the defendant, accompanied by two special interrogatories, finding that the plaintiff was permanently and totally disabled from epilepsy between the date of his entry into the military service of the United States and the date of the two contracts of insurance. Upon the general verdict and the special findings, a judgment was entered in favor of the

defendant, from which the present appeal was prosecuted.

"If the appellant became totally and permanently disabled after his entry into the military service of the United States, and before applications for the policies in suit were made, and before the policies issued, the charge of the court was correct, because a policy of insurance does not ordinarily cover a loss already suffered. As said by the Attorney General of the United States:

" 'In cases which have heretofore arisen in the courts, I have advised the bureau that the insurance is collectible if applied for within the time allowed, and before either total permanent disability or death has actually occurred, and hence is not defeated by the fact that the applicant was mortally ill. However, what is provided for is a contract of insurance against something that may happen, and not of indemnity for something which has already happened. If no application has been made when death occurs, of course there is no insurance; and if total permanent disability has been incurred a future application for insurance cannot cover it.' 31 Op. of Attys. Gen. 534."

The same court, speaking through Judge Dietrich, followed that exposition of the law six days later in Anderson v. U. S., 36 F. (2d) 45, 46, where it said:

"Upon the admitted facts we are unable to distinguish the case, in its legal posture, from that of Jordan v. U. S. (No. 5916 in this court, decision filed November 12, 1929) 36 F.(2d) 43, but in response to the earnest contention of counsel for appellant we have re-examined the statutes in the light of certain considerations now perhaps more fully brought to our attention.

"By section 13 of the Act of October 6, 1917, 40 Stat. 399, the Director of the Bureau of War Risk Insurance was authorized to make rules and regulations necessary or appropriate to carry out the purpose of the act, and by section 402 it was provided 'that the Director, subject to the general direction of the Secretary of the Treasury, shall promptly· determine upon and publish the full and exact terms and conditions of such contract of insurance.' 40 Stat. 409. Accordingly, in Bulletin No. 1, published on October 15, 1917, it was provided, among other things, that policies should contain the provision that, 'if the insured became permanently or totally disabled before this policy was applied for, it shall, nevertheless, be effective as life insurance, but not against such disability.' This limitation or restriction, we think, was not in conflict wth the terms of the act, and was valid, and it is to be deemed a part of the policy issued to appellant upon his application made February 8, 1918. By it, therefore, he was bound."

It must therefore be accepted as the settled law in this circuit.

But plaintiff contends that these decisions have been expressly overruled by special provisos and that the policies are incontestable. In other words, so far as plaintiff is concerned, not only must he be deemed to have applied for and been issued a contract, but, by subsequent statute, such policy is incontestable. This section referred to, which was made effective as of April 6, 1917, was put in effect in 1930 (38 USCA § 518), and reads:

Section 307: "All contracts or policies of insurance heretofore or hereafter issued, reinstated, or converted shall be incontestable from the date of issuance, reinstatement, or conversion, except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United States, and subject to the provisions of section 447 of this title."

Formerly it (43 Stat. 627, § 307 [38 USCA § 518]) read: "All such policies of insurance heretofore or hereafter issued shall be incontestable after the insurance has been in force six months from the date of issuance or reinstatement, except for fraud or nonpayment of premiums and subject to the provisions of section 23." .

But this section is inapplicable to the case at bar. The congressional intention was to adhere to the theory of contract and not to pension every one who had a policy, or automatic insurance. Such a distinction would do injustice to service men who carried their own risks and were disabled.

If the theory of contract prevails, the government does not initiate a contest when it requires the plaintiff to prove that he became permanently and totally disabled during the life of the policy. If this were a "contest," affirmative pleading upon the part of the United States would be required in each of the cases which the United States daily defends, upon the ground that the disability did not occur during the life of the policy, because it happened after its lapse. But this is not the rule. Therefore no valid reasoning can require the government to prove affirmatively that the disability occurred before the policy issued, nor transmute its defense on this ground into a "contest."

See Davis v. U. S. (D. C.) 57 F.(2d) 871. Plaintiff has the burden of allegation and proof in both instances. The validity of the policy is not in question, but a failure of proof of loss within its terms.

"Seeking to uphold the plain provisions of the contract of insurance does not constitute a contest as to the validity of the policy." See Flannagan v. Prov. Life & Acc. Ins. Co. (C. C. A.) 22 F.(2d) 136, 140.

The United States in this case denies the issuance of a policy. But if it be assumed a valid policy issued, plaintiff must prove something has happened since its issuance which entitles him to recover. The plain language of the policy directs that he prove that he became permanently and totally disabled during the life thereof, and an extra clause is added to show that prior permanent and total disability is excluded.

" * * * An ordinary incontestable clause cannot be used as a means of rewriting into the contract risks and hazards which the policy itself positively excluded." See Jolley v. Jefferson Stan. Life Ins. Co., 199 N. C. 269, 154 S. E. 400, 402.

After the passage of the original incontestable clause, the Comptroller General construed it to mean that a permanent and total disability within six months after reinstatement of a policy had the effect of maturing it, and permitted a defense upon that ground. Phillip McNish, 7 Decisions Comptroller, 551. Judge Rudkin discussed the matter in disposing of a secondary argument, in Jordan v. U. S. (C. C. A.) 36 F.(2d) 43–45, 73 A. L. R. 312, and determined from an inspection of the report of the House Committee that the intention of Congress was to permit the United States to defend a suit upon the ground that permanent and total disability had occurred within six months after issuance of the policy, although he points out that there was respectable authority to the contrary. In Jensen v. U. S., 29 F.(2d) 951, this court, through Judge Bean, had refused to allow the rule adopted by the Comptroller and had adopted the commercial rule.

The wording of the Senate Report (No. 1128, 71st Cong. Second Sess. pp. 9, 10) makes it clear that it was the intention of Congress to change the rule thus announced by the Comptroller as to reinstated policies. The report mentions the decisions of the Comptroller upon this point and directly states that it is the desire to change that doctrine by the instant legislation, but it does not say that there was any idea of overruling the Attorney General nor the decision of the Circuit Court of Appeals in the Anderson Case, nor of abrogating Bulletin No. 1 of the Bureau. The Comptroller and the courts have adopted and given effect to the new statute. See Administrative Decisions Veterans' Administration, No. 415, April 10, 1932; Stevens v. U. S., U. S. District Court, District of Minnesota, Fourth Division filed January 13, 1932, 60 F.(2d) 159.

It seems eminently proper that where the United States has permitted a soldier to reinstate a policy which he carried during his war service, in the absence of fraud it should not be permitted to discover permanent total disability has existed within six months after the reissue, and avoid recovery. The reissue should relate back to the date of the original policy. But on the other hand, the United States should not give one a contract who had none issued to him, nor should it allow recovery contrary to the plain terms of the policy actually delivered. It cannot be believed that the intention of Congress was to overrule the Anderson Case and the opinion of the Attorney General, besides erasing the explicit words of the policy without the use of apt language in the act. The language used presents no ambiguity and is not to be given a different meaning from its obvious intent by reference to some congressional report.

The real question was whether Congress intended that one who was permanently and totally disabled before entry into the service, who was passing by the examining officer for enlistment but who was almost immediately discharged on account of his disability, without rendering any service, and without payment of any premium, should be deemed to have a contract of insurance. The automatic insurance was only to protect those who were ordered into danger or death before they had an opportunity to protect themselves by applying for insurance, and not to pension those who, prior to induction, were physically unfit to serve the United States.

The voluminous record of treatment, hospitalization, and attempted training is such that the plaintiff has no reason to complain that the United States has been ungrateful for slight services he may have rendered between November 1, 1917, and November 9, 1917.

It is impossible for plaintiff to prove, as he must in order to recover, that he was permanently and totally disabled on November

9, 1917, and on the other hand that he was not so disabled on November 1, 1917.

Findings and judgment are for defendant.