**PATTON v. UNITED STATES.**

No. 47661.

Court of Claims.

Feb. 2, 1948.

Ross Cummings Patton, pro se.

Carl D. McManamy, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., (J. F. Mothershead, of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

LITTLETON, Judge, delivered the opinion of the court:

Plaintiff filed his petition herein to recover reimbursement of pioneering, development and labor expenses over a fourteen-year period from 1928 to 1942, relating to a combination "Fire Fighting Apparatus and System—to combat air raids," and in connection with the preparation, filing and prosecution of Application No. 230,760 for U. S. Letters Patent on the fire fighting apparatus and system for combating air raids as therein described. Plaintiff also claims compensation for the value of his said invention which he alleges was

manufactured for and used by the United States subsequent to September 20, 1938, the filing date of the application for a patent.

The U. S. Patent Office declined to grant Letters Patent upon said Application No. 230,760.

The defendant has filed a demurrer to the petition on the ground that it does not set forth facts' sufficient to constitute a cause of action against the United States or any cause of action of which this court has jurisdiction.

The facts material to the issue of law presented as alleged in the petition are in substance as follows:

Plaintiff is a resident and citizen of Philadelphia, Pennsylvania. During a period of about ten years prior to September 20, 1938, plaintiff engaged in "pioneering development labor," and incurred considerable expense, relative to and in connection with the preparation and filing in the U. S. Patent Office of Specifications and Claims with Application No. 230,760 for U. S. Letters Patent for a "Fire Fighting Apparatus and System—to combat air raids." The petition describes this apparatus and system as comprising "a combination self-propelled and trailer fire pump articulated and extra trailer fire pumps towed by any method, and submounted 50 calibre automatic Colt-Vickers antiaircraft machine gun, of claimant's modified design, adapted to fire up to 90° in a 360° radius over the heads of the drivers of the leading self-propelled vehicle on which it is mounted."

On October 6, 1938, plaintiff offered the defendant's Secretary of War the free use of the apparatus and system, as set forth and described in plaintiff's application No. 230,760, in the District of Columbia to test out a pilot model and system. The Secretary did accept this offer of free use of the invention in the District by manufacturing and testing of a pilot model and system. Plaintiff was financially unable to manufacture and test such a pilot model. Plaintiff furnished to the Secretary of War all the engineering information and data compiled by him and the detailed specifications on the construction, installation and operation of the complete "fire fighting appara-

tus and system to combat air raids" covered by said Patent Application No. 230,760, but no contract existed between plaintiff and defendant whereby defendant agreed to pay plaintiff for his apparatus and system. On May 1, 1941, after plaintiff had claimed that the United States had manufactured or procured and was using plaintiff's apparatus and system, Maj. General E. S. Adams, Adjutant General, wrote plaintiff as follows:

"With reference to the combination machine gun and fire truck which you submitted to the War Department in 1938 attention is invited to the letter addressed to you on November 7, 1938, in which you were advised that after careful examination your motorized combination fire truck and machine gun was found to possess insufficient value for military purposes to warrant further consideration. You may rest assured that the War Department has not utilized your proposal nor does it contemplate such action, and you, are therefore, not entitled to any remuneration."

The petition alleges, however, that the apparatus and system, as disclosed by the information and data furnished to the Secretary of War by plaintiff and as described in his Patent Application No. 230,760, was manufactured by or for the United States and used by it in the Coast Guard and Ordnance Department. Plaintiff alleges that his "trailer fire pump invention" was manufactured for defendant by the Chrysler Corporation, the Ford Motor Company, the Hale Fire Pump Company and the American LaFrance Fire Engine Company, subsequent to September 20, 1938.

On August 14, 1941, plaintiff mailed to the War Department, Holabird Quartermaster Depot, Maryland, % Major General E. S. Adams, War Department, Washington, D. C., an invoice as follows:

"Royalty for initial installation and exclusive use at Fort Dix, Airport, New Jersey, of mechanical reeling device, steel cable and grapple hook, in combination with fire-fighting vehicle (or crash truck) as covered by U. S. Patent Pending No. 230,-760, Filed Sept. 20, 1938, for 'fire-fighting apparatus to combat air raid.'

"Amount $750.00"

This invoice was accompanied by a letter of the same date from plaintiff as follows:

"War Department,

"Washington, D. C.

"Reference: AG 070 (7-24-41) MB

"Attention: Major General E. S. Adams,

"The Adjutant General.

"Dear Sir:

"In reference to my letters July 18, July 24th, and August 6, 1941, relative to device for removing bombed or flaming wreckage, covered by U. S. Patent Pending No. 230,-760, filed September 20, 1938, for 'fire-fighting apparatus to combat air raid,' which has been adapted to a self contained fire-fighting vehicle constructed at Holabird Quartermaster Depot and now in use at Fort Dix, New Jersey, Airport, I am enclosing invoice in Quadruplicate to cover royalty for initial installation, amount $750.00 which I presume you will find in order."

The invoice was not returned and no reply was made to plaintiff's letter.

Plaintiff's application No. 230,760, for U. S. Letters Patent, was considered in due course by the Patent Office and was denied on the ground that the apparatus and system as described in the specifications, and claimed in the Claims of the Application, was not patentable over the prior art and was anticipated by certain prior patents which were cited by the Patent Office, one of which was U. S. Patent No. 1,357,982, to House, November 9, 1920. The decision of the Patent Office denying plaintiff's application for Letters Patent was affirmed by the Board of Patent Appeals on April 14, 1941. Plaintiff prosecuted an appeal to the United States Court of Customs and Patent Appeals and that court in an opinion rendered April 27, 1942, affirmed the decision of the Board of Patent Appeals. Plaintiff was unsuccessful in his efforts to have the decision of the Court of Customs and Patent Appeals reviewed by the Supreme Court by writ of certiorari.

The question presented for decision by the allegations of fact set forth in plaintiff's petition is, whether this court has jurisdiction of plaintiff's claim for reimbursement for development expenses incurred and compensation for labor performed in connection with his application for a patent covering a "fire fighting apparatus and system to combat air raids," and, in addition, compensation for the alleged use by defendant of such device as designed by him.

■ The jurisdiction of this court is limited by law to those claims on which the Congress has specifically authorized suits to be brought against the Government and unless the facts alleged in a petition filed clearly bring the claim made within the jurisdiction so conferred, we cannot consider and adjudicate such claim on its merits.

■ Under the facts and circumstances of this case, we are unable to find authority in law for holding that this court has jurisdiction to consider the merits of plaintiff's claim for reimbursement of his expenses and for compensation for the alleged use by defendant of his design for a fire-fighting device. The claim for compensation made by plaintiff for the unauthorized use by defendant of his design or device is not one based upon and supported by a contract between plaintiff and the Government or a right granted by an act of Congress, but is one based upon moral or broad equitable considerations which do not come within our jurisdiction. In Bonner v. United States, 9 Wall. 156, 160, 76 U.S. 156, 160, 19 L.Ed. 666, the court held that "As the Government has not thought fit to allow itself to be sued in the Court of Claims on equitable considerations, it follows that the remedy of the claimant, if any now exists, is with Congress." This court has jurisdiction under Section 250, U.S.Code Annotated, Title 28, only to adjudicate legal claims based upon some right granted by the Constitution of the United States, a law of Congress or a contract express or implied in fact with the Government. Plaintiff had neither an express contract nor a contract implied in fact with the defendant for reimbursement of his expenses or for the payment to him of compensation for his information, design or device. The fact that plaintiff endeavored to establish a contract relationship with the Government is not enough to give this court jurisdiction to hear and determine his claim.

Claims which can only be allowed on the basis of moral considerations or honorable dealings or upon the broad principles of equity and justice, are not within the jurisdiction of this court under Section 250, U.S.Code Annotated, Title 28, or Section 68, U.S.Code Annotated, Title 35, unless specifically authorized by a special act of Congress, United States v. Realty Co., 163 U.S. 427, 440, 16 S.Ct. 1120, 41 L. Ed. 215; Lamborn & Co. v. United States, 65 F.Supp. 569, 106 Ct.Cl. 703, 722, 723; Bonner v. United States, supra, and such claims can only be considered and allowed by Congress. A claim for a money judgment against the United States cannot be allowed by the court under the jurisdiction which has been conferred by Congress, when such claim is founded upon or supported only by an obligation implied in law. Sutton v. United States, 256 U.S. 575, 580, 581, 41 S.Ct. 563, 65 L.Ed. 1099, 19 A.L.R. 403; Merritt v. United States, 267 U.S. 338, 340, 341, 45 S.Ct. 278, 69 L.Ed. 643; United States v. Minnesota Mutual Investment Co., 271 U.S. 212, 217, 46 S.Ct. 501, 70 L.Ed. 911. In Baltimore & Ohio R. Co. v. United States, 261 U.S. 592, 597, 43 S.Ct. 425, 426, 67 L.Ed. 816, the court said:

"The 'implied agreement' contemplated [by section 145 of the Judicial Code, 28 U.S.C.A. § 250] as the basis of compensation is not an agreement 'implied in law,' more aptly termed a constructive or quasi contract, where, by fiction of law, a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress, but an agreement 'implied in fact,' founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."

Section 68, U.S. Code Annotated, Title 35, provides that "Whenever an invention described in and covered by a patent of the United States shall hereafter be used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, such owner's remedy shall be by suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture." But it is clear from the language of this section that until a patent has been granted and issued by the Patent Office this court has no jurisdiction of a claim for compensation for the unauthorized use of the claimed invention. This court has no jurisdiction to review a decision of the Patent Office denying a claim for a patent.

A claimant has no exclusive rights in his invention until he has obtained a patent. Fletcher v. United States, 11 Ct. Cl. 748, 758. In Morris Robbins v. United States, 65 F.Supp. 462, 463, 106 Ct.Cl. 278, it was pointed out that "Since a patent has not been issued * * * this court has no jurisdiction to allow compensation for the unlicensed use of an invention under Title 35, Section 42 or Section 68, U.S.C. A." And, at page 463 of 65 F.Supp., at page 280 of 106 Ct.Cl., the court further held that—

"Since the plaintiff does not allege any such contract, any claim which he might have, based on any conduct of defendant, if wrongful, would be classed as a tort; and regardless of its merit could not be considered here in the absence of special legislation, since the Congress has not conferred upon this court jurisdiction to try tort cases. Ball Engineering Co. v. White & Co. 250 U.S. 46, 57, 39 S.Ct. 393, 63 L.Ed. 835."

In Gayler et al. v. Wilder, 10 How. 477, the court, at p. 493, 13 L.Ed. 504, held that "The inventor of a new and useful improvement certainly has no exclusive right to it until he obtains a patent. This right is created by the patent, and no suit can be maintained by the inventor against any one for using it before the patent is issued." And in Dable Grain Shovel Co. v. Flint, 137 U.S. 41, at page 43, 11 S.Ct. 8, at page 9, 34 L.Ed. 618, the court said:

"To the argument of the plaintiff's counsel that the statute [R.S. 4899, 35 U.S.C.A. § 48] is unconstitutional as depriving the inventor of his property without compensation, there is a twofold answer,—the patentee has no exclusive right of property in his invention, except under and by vir-

474

tue of the statutes securing it to him, and according to the regulations and restrictions of those statutes."

 Plaintiff makes the further contention that he should be allowed recovery for expenses and compensation for the use of the unpatented "Fire Fighting Apparatus and System" under Sections 89 to 96, U.S. Code annotated Title 35, Act of October 31, 1942. A study of these sections shows that the rights therein granted to the owner of an invention, patented or unpatented, to sue the United States for compensation apply only in those instances where the owner of the invention has granted a license to another for the manufacture and use of such invention at a specified royalty, and the head of the department concerned makes an order reducing the amount of royalty so fixed in the existing license on such articles covered by the invention as may be manufactured for the United States, or has made an agreement under Section 91. We cannot bring plaintiff's claim within the provisions of Section 89 of this statute since he had no royalty agreement with the United States, or any one else for the manufacture and use of his alleged invention. The provisions of Section 90 or 91 cannot be applied because the Secretary of War made no order such as therein described, nor did he enter into an agreement with plaintiff. Moreover the sections relied upon would seem to have no application in a case where a patent for a claimed invention had been denied by the Patent Office. The word "unpatented" in the phrase "whether patented or unpatented" used in Sections 89 and 94, supra, had reference to an invention with respect to which an application had been filed and on which the granting of a patent had been withheld for the reason and in the manner specified in Section 42, U.S.C.A., Title 35 Act of July 1, 1940, 54 Stat. 710. The right to sue the United States in such a case is dependent upon a subsequent grant of Letters Patent, unless, as stated in Sections 89 and 90, there is an existing royalty agreement and an order is made reducing the royalty fixed therein.

Since the facts set out in plaintiff's petition are not sufficient to establish a cause of action against the Government within the jurisdiction of this court, the defendant's demurrer must be sustained and a judgment entered dismissing the petition. It is so ordered.