Booth, Judge,
delivered the opinion of the court:
This is a suit to recover royalties for an alleged infringement of plaintiff’s Patent No. 1366148. The same plaintiff in suit 52-A, this day decided, preferred a claim for com *528 pensation for the use of his Patent No. 1868981 under contract, and in that 'case asserted liability for' the use of the device covered by Letters Patent No. 1366148 on the grounds that the same came within claims 1 and 2 of Letters Patent No. 1368981. In disposing of case 52-A we necessarily disposed of this issue, and it carries with it the disposition of the contention advanced in the instant case.
The plaintiff, as to the patent involved in this case — i. e., No. 1366148 — commenced the manufacture of spirals for the Zeidler Company in accord with this conception some time in the spring of 1918. The company previously made and delivered over 1,000,000 spirals of plaintiff’s first design subsequently covered by Patent 1368981.
Plaintiff found the manufacture of spirals according to his second design to be less in cost than any design he had theretofore used, and under at least five separate contracts made with the Zeidler Company for spirals the said company manufactured, delivered, and received pay for close to. 6,000,000 spirals about three years before plaintiff received his Letters Patent No. 1366148. That the plaintiff licensed the Zeidler Company to manufacture and sell both types of spirals designed by him personally is too clear for serious, contradiction. It was he, the patentee in this suit, who personally conducted all the business transactions of the Zeidler Company, personally solicited the substitution of his types of spiral for the French type adopted by the Government, and apparently never conceived the idea of protecting his conceptions under the patent laws until long after a vast number, running into the millions, made in accord with his two types had been furnished, used, and paid for.
In this very case the plaintiff filed his application for Patent No. 1366148 April 24, 1918. The application was. allowed September 28, 1918, and the plaintiff voluntarily suffered a forfeiture of the same by a failure to pay the final fee. It was not until April 18, 1919, after the war was over, and millions of his spirals had been sold by the Zeidler Company under his personal supervision and direction, that, he renewed his application for patent, which, after amendments, was allowed on July 21, 1920, and letters patent issued January 18,1921. Why the plaintiff did not vigorously *529 present his application while the spirals were being manufactured is left to conjecture. The Government, which he now sues, was obviously without knowledge of a patent until at least two years after all but an insignificant number of spirals had been used. So were Government contractors equally in the dark as to any patent claims of the plaintiff. The proposition now advanced by the plaintiff is somewhat astounding. We are unable to comprehend by what process of reasoning a patentee who is himself a manufacturer of his patent device may make and vend without restriction millions of the same, reap the major portion of the profits from such sales, and then assert a claim to an additional sum of vast proportions upon the theory of an infringement of the very thing he not only unqualifiedly licensed another to make, but personally managed and conducted the manufacture thereof himself. We will not repeat what was said as to the validity of Patent No. 1368981 in case 52-A. It applies with equal force to Patent No. 1366148.. However, it is not necessary to so hold herein. In this case the pat-entee seeks to claim a patent for “ improved methods for securely connecting together two pieces of metal or the like . material without welding or riveting or other devices or expedients, and to articles made in accordance with such process.” Thus it will be seen the patent claims both a process and article monopoly. As to the process claims they are admittedly eliminated because the articles were made previous to the issuance of the patent, thereby limiting the case to articles used.
The plaintiff’s second type of spiral, identified in the record as type “ E,” comes within the claims of his patent No. 1366148. As to all those made previous to the grant of letters patent the case fails for the reasons stated. The only remaining claim pertains to a type of spiral known as type “ F,” a spiral developed and manufactured by the International Steel and Ordnance Company in the spring of 1918 about the same time the plaintiff conceived his folding process. This same type “ F ” was later manufactured by the La Pierre Manufacturing Company, this company making 1,363,450 spirals in accord with the same. The prior *530 art which we have cited in the findings — granting the validity of the plaintiff’s claim — narrows the patent in suit, and limits it to the specific thing claimed. Claims 8 and 9 of Patent 1366148, the only claims upon which infringement is predicated, do not substantially enlarge the basic idea of the inventor so as to embrace an article made by a folding process which produces a result dissimilar to the real conception of the inventor. The predominating idea of the plaintiff, the idea he conceived, and the thing he saw, if it 'is invention at all, was a method of safely connecting two pieces of metal together without rivets or other extraneous expedients. Connecting safely two pieces of metal without rivets, etc., was old in the art. The suggestion to try his hand in the matter came from his. experience as a manufacturer of spirals, and what he was really intending to accomplish was to design the weighted end of a spiral so as to cheapen production and increase output. The plaintiff didn’t know what a spiral was until he saw the French specifications of how to make one. What he set out to do was to vary the detail of manufacture specified for the making of French spirals, and after designing one departure he found from experience a two-piece spiral tape could be successfully manufactured. All this was accomplished not upon the plaintiff’s initiative, but as the result of knowledge brought to him by manufacturers and designers of a prior day. Methods, process, and spirals antedated him to such an extent that all that was left was a specific method and identical article, and this at the most is all he may claim.
The spiral, Exhibit “ F,” made by the International Company is not the spiral covered by Letters Patent No. 1366148. A precise difference is clearly apparent from an illustration in defendant’s brief. It visualizes the situation with greater clearness than words may do, and so we reproduce it here.
We can not escape the conclusion that plaintiff’s ideas and conceptions were not inventions. In so far as spirals are involved, it seems to us manifest. In this case the spirals which the Zeidler Company made, which conformed to his alleged Patent No. 1366148, operated in exact conformity with the functioning elements of the French type. The plaintiff evolved no new article except in design. He gave *531 to the art no device which contained a single novel feature which in the remotest degree improved it as a dependable -safety spiral. In no respect did he modify the predominating idea which characterized the French spiral or bring into

¡being an article which served any other purpose than econ-omy in production. A mere change in detail of manufacture, one which would readily suggest itself to any one .-skilled in the art, a mere exercise of mechanical skill or shop *532 practice, is not invention. So that, in any event, we believe that, taken in connection with what we have said in case 52-A, this case is also without merit, and the petition must be dismissed. It is so ordered.
Graham:, Judge; Hat, Judge; DowNex, Judge; and Campbell, Chief Justice, concur.