Booth, Chief Justice,
delivered the opinion of the court:
The agreed statement of facts certified to the court for answer develops two questions of law of prime importance to plaintiff’s case. As we view the case stated, the court’s answers to the first, second, and sixth questions determine the issue raised.
Plaintiff’s petition alleges a cause of action under the act of October 6, 1917 (40 Stat. 394, c. 95), predicated upon an alleged infringement of his letters-patent for an aircraft control mechanism issued to him on April 29, 1924, under the provisions of R. S. 4897 (U. S. C., Title 35, Sec. 38). The acts mentioned are set forth in the agreed statement of facts and hence not repeated in this opinion.
The plaintiff’s first application for a patent covering the mechanism involved was filed in the Patent Office on September 16, 1918. The then Commissioner of Patents very soon after the filing of the application, acting in pursuance of the authority conferred upon him by the act of October 6, 1917, supra, issued the secrecy order appearing in Finding IY. Later, on January 18, 1919, the secrecy order was rescinded by the Commissioner, and on March 15, 1921, *50 plaintiff’s patent application embracing all claims was allowed and all that remained for the plaintiff to do to procure the issuance of letters-patent was to pay the final fee exacted under the patent law. This he did not do and consequently voluntarily allowed his patent application to become forfeited.
Subsequently on January 9, 1928, plaintiff filed under R. S. 4897, supra, a renewal application as he concededly had a legal right to do, and this application was allowed, embracing forty-one claims and passed to patent April 29, 1924. The parties to the litigation submit to the court the legal questions involved prior to the taking of testimony before the Commissioner for the obvious reason that the taking of testimony would involve great expense to both parties to the case.
The plaintiff contends that inasmuch as his original cause of action arose under the act of - October 6, 1917, upon which he solely relies, he did not lose this right when his patent application filed under that act was forfeited, because under the provisions of R. S. 4897 he possessed the right within two years to file a renewal application involving the same invention and having done this precise thing and ultimately received letters-patent he is entitled to sue under the act of October 6,1917.
In argument to sustain the above contention plaintiff emphasizes the point that under established law an inventor possesses the right to avail himself of all statutory privileges relating to the procurement of patent rights, and so long as he keeps within the same his rights are in nowise prejudiced, notwithstanding they originated under one statute and are prolonged under another one. A continuity of statutory rights is insisted upon, procedural rights in many respects which serve to give to a patent application the character of indivisible proceedings, i. e., what takes place subsequent to the allowance of the original application is simply a continuance of prosecuting the same through the Patent Office and no more than the final step essential to procuring the issue of letters-patent which would have been issued at an earlier date except for the happening of the act which caused the delay, and hence patent rights do ac- *51 erne under the act in force at the time the original application was filed.
This court has had a number of cases before it directly involving the act of October 6, 1917; they do not throw much light upon the issues of this case and we will not refer to them specifically. We cite them in the margin[1] and from them repeat the construction given to the statute, i. e., its scope and intent. We are now only concerned with the legal proposition as to whether the plaintiff has a cause of action under the act, having received his letters-patent in virtue of R. S. 4897.
The war act of October 6, 1917, was a remedial statute. It enlarged a patentee’s rights with respect to the date when infringement of the same began because of the exercise of emergency authority granted the Commissioner by Congress. For a stated period, Congress waived for the Government the right upon its part to escape liability for infringement of a citizen’s patent until subsequent to the grant to him of a patent, and consented if liable to respond in damages as of and from the date of infringement and not the date of the patent.
The words “if and when he ultimately received a patent”, which precede the conferring of jurisdiction upon this court to award just compensation in cases established under the act, have exclusive reference to cases arising under the act and comprehend the granting of delayed letters-patent, delayed because of secrecy orders and the impounding of the application in such a way as to render the date of issue problematical. The governmental situation was critical. Nevertheless, the rights of inventors were to be taken care of.
The Commissioner possessed the undoubted authority to withhold the grant of a patent, notwithstanding the usual procedure of perfecting and prosecuting an application therefor obtained. If an inventor whose application had been allowed desired to avail himself of the beneficial pro *52 visions of this exceptional act, all that he needed to do was to obey the order of the Commissioner of Patents with respect to secrecy, pay the final fee, and receive letters-patent. If this was not done his rights reverted as in this instance to other statutory provisions remedial in their nature.
In order words, the intent and purpose of the act of October 6, 1911, was to compensate in a measure the patentee for a possible injury and loss of damages due to a necessary act of the Government, whereas, under R S. 4891, the applicant whose application has been allowed is granted the privilege of obtaining letters-patent at a later date under specified limitations wherein the delay in securing the same is due to his own remissness.
Failure to pay the prescribed final fee was not regarded to be of such a serious consequence as to bar the applicant from ever receiving letters-patent based upon a previously allowed application and Congress remedied the situation by granting the right to renew such an application within two years after the allowance of the original one. The right of renewal was not unconditional.
The renewal act provided “But no person shall be held responsible in damages for the manufacture or use of any article or thing for which a patent was ordered to issue under such renewed application prior to the issue of the patent.” The significance of this provision is found in the fact that under the renewal act patent rights accrue from the date of the issuance of the patent as provided in the act, and under no other act.
What we mean is that while the condition imposed may include a statement of established patent law, it was inserted to emphasize the fact that as to any infringement of patent rights the same must follow the granting of a patent upon the renewal application. So far as damages for infringement are concerned, the act had no ex post facto effect and could have none, no matter from what source previous patent rights arose. The renewal act, R S. 4891, grants a remedy in accord with its provisions, and bears no relation whatever to the act of October 6, 1917, so far as suits against the Government are involved.
*53 The act of October 6, 1917, covers in terms a particular state of facts operative only when the country is at war, and the essence of the remedy granted lies in a possible and contemplated delay upon the part of the Government in issuing a patent. Congress did not intend to extend its privileges to the voluntary abandonment of the rights conferred, or in instances where a patentee failed to take advantage of the law.
This act grants a specific right to sue the Government, and provides the terms and conditions upon which such a suit-may be brought.
The plaintiff did not receive letters-patent until April 29, 1924, more than three years after the allowance of his original application. The patent monopoly he acquired was granted under E, S. 4897 which accorded to him the privilege of filing a second application “the same as in the case of an original application” and prosecuting the same through the Patent Office.
The act of October 6, 1917, was designed and intended for a special purpose to meet 'an emergency. The legislation embraced in K. S. 4897 was intended to grant an additional remedy in patent procedure, and a suit against the Government may not be predicated upon both acts under the existing facts and circumstances of this case. The act of 1910, (36 Stat. 851), as amended in 1918, affords a remedy by allowing suits against the Government when a patentee has received his letters-patent and the Government is charged with infringement, and the plaintiff did not receive letters-patent until 1924. Plence, his remedy is under the foregoing statutes.
To the first two questions the court answers “Yes.” Answering question six, plaintiff’s right, if any legally exists, to sue the Government is given by the act of June 25, 1910, as amended by the act of July 1, 1918 (40 Stat. 705). Kesponse to the above questions by the court renders it unnecessary to answer the remaining ones. W.e think the answers given determine the issue presented.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and GeeeN, Judge, concur.

 Win. A. Zeidler v. United States, 61 C. Cls. 520; Id. 537;
Rodman Chemical Co. v. United States, 65 C. Cls., 39, certiorari denied 277 U. S. 592;
Carl G. Allgrunn v. United States, 67 C. Cls. 1; Ordnance Engineering Corporation v. United States, 68 C. Cls. 301;
Emil Gathmann v. United States, 71 C. Cls. 680.