**FULMER v. UNITED STATES.**
Civ. A. No. 6174.

United States District Court, N. D.
Alabama, S. D.

March 7, 1949.

138

John D. Prince, Jr., of Birmingham, Ala, for plaintiff.

E. R. Weisbender, of Washington, D. C., Attorney, Department of Justice, John D. Hill, U. S. Atty., and W. R. Bradford, Asst. U. S. Atty., both of Birmingham, Ala., for defendant.

LYNNE, District Judge.

This case came on for decision on a Motion for Summary Judgment by the United States of America and involves four primary issues which are here presented for the first time in any District Court of the United States, in so far as counsel for the parties and this Court have been able to ascertain.

In view of this novel situation, the Attorney General, at the suggestion of the United States District Attorney for this Federal District, especially designated Mr. E. R. Weisbender, an attorney of the Department of Justice in Washington, who filed the motion here in question, under his superiors noted on the motion, and ably briefed and presented an oral argument on the issues of law involved.

Plaintiff brought this action against the United States under the provisions of the Air Corps Act of July 2, 1926, as amended, Title 10 U.S.C.A. § 310(i); the Secrecy or Voluntary Tender Act of October 6, 1917, as amended, Title 35, U.S.C.A. § 42; and the Jurisdictional or Tucker Act of March 3, 1887, as amended, Title 28, U.S.C.A. § 41(20) [now § 1346], seeking compensation for the alleged use of "a certain device, plan, means or method for bomb sight·indicating chart for aircraft"

allegedly originated, developed, invented, and owned by him.

Following its answer, denying that plaintiff had stated any cause of action of which this Court has jurisdiction and denying any liability to plaintiff, defendant took plaintiff's deposition under Rule 26 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Concurrently with the filing of said deposition, defendant filed certain documentary evidence identified in said deposition and, under Rule 56, presented certain affidavits of Governmental officials, with appended copies of official records relevant and material to the issues; as well as copies of official records authenticated in accordance with Rule 44.

It is upon these pleadings, said deposition, and the admissions, affidavits and evidence on file herein that defendant seeks summary judgment, defendant urging that there is no genuine issue as to any material fact, and that it is therefore entitled to summary judgment or dismissal of this action as a matter of law as to all issues, thereby disposing of the complaint in its entirety without more.

Prior to dealing with the issues of law presented by the motion, it will be helpful to review in considerable detail the allegations of the complaint and the undisputed facts revealed by the matters of record.

It is alleged in the complaint "that on, to-wit, March 18, 1942, plaintiff entered into an oral agreement with officers, agents, servants or employees of the defendant" pursuant to which plaintiff disclosed to defendant his "device, plan, means or method for bomb sight indicating chart for aircraft" upon the promise of said representatives of defendant "that said disclosure would be treated in confidence, that such disclosure would not be revealed to the public or otherwise be appropriated, [and] that defendant would pay to the plaintiff for the use of said device, invention, means or method the reasonable value of same."

Plaintiff further avers "that on or about September 9, 1947, defendant in a publication prepared by it, viz., War Department Field Manual 20-100 Aviation did publish plaintiff's said invention, plan, means or method" and that since said publication

was designed and intended for the instruction of the military forces of the defendant, "defendant has actually used said invention, device, plan, means or method of plaintiff." In conclusion plaintiff alleges that the Government "has utterly failed and refused to compensate him for said use thereby breaching its agreement with the plaintiff."

In his deposition plaintiff refers to additional unpleaded alleged uses of his invention by the Army Air Force and additional unpleaded alleged contractual relations with the National Inventors Council, an agency of the Government, and representatives of the Air Force.

Defendant, in its brief accompanying the Motion for Summary Judgment, sets forth a detailed statement of "undisputed Facts" based entirely upon the matters of record. That statement is accepted by the Court as a full and fair statement of the facts and as undisputed inasmuch as plaintiff has in no way challenged said statement nor the affidavits or other matters of record filed by defendant, either prior to or during the hearing of defendant's motion, and since counsel for plaintiff, when given an opportunity to comment on the facts as so stated by defendant, conceded that the

facts herein are undisputed. Plaintiff neither urged trial as to any allegation or circumstance, nor contended that any further proceedings might develop evidence other than is now of record. The Court has examined the record and finds that the deposition of plaintiff is strictly in accordance with the Federal Rules of Civil Procedure; that the documentary evidence referred to in and submitted with the deposition is admissible, relevant, material and undisputed in so far as it related to the alleged contract and use by the Government; that the affidavits were made by Government officials competent to testify to the matters stated therein; that the affiants based their statements on personal knowledge of the facts stated in their affidavits; that the facts stated in and revealed by the official documents appended to the affidavits are admissible, relevant and material; and that the official records of the Patent Office are properly authenticated under Rule 44 and are admissible evidence, relevant and material to the issues.

The Court therefore finds no controversy as to any material fact and accordingly adopts defendant's statement thereof.[1]

---

[1] Statement of Undisputed Facts

Plaintiff testified in his deposition that he had no knowledge, experience or training in connection with bomb sight mechanisms and bombing charts other than his own alleged development in suit; that he was not in Government service during nor since the alleged development; and that he had never been asked by anyone to work on the idea. He stated that he first thought of devising something of the character in 1933 but did not arrive at his completed plans until about 1940. The earliest dates he could establish, however, for any written description or sketch were March 16 and April 6, 1942, when he voluntarily sent them to the National Inventors Council, a governmental agency set up with a staff of engineers and technical experts to examine and evaluate inventive ideas for possible value to the Nation in the prosecution of World War II.

That which plaintiff sent to the National Inventors Council by letter of March 16, 1942, consisted of a single sheet bearing two parallel columns of figures whereby certain designated "miles per hour" of airplane flight were converted into "feet per second." In that letter of transmittal plaintiff offered to "supervise and install the idea, in the event you are interested, on a salary and expense basis."

In a letter to the National Inventors Council on March 18, 1942, plaintiff suggested that "the bomb site telescope should be installed as near as possible at the nose end, or the propeller end, of the plane."

By letter of April 6, 1942, plaintiff submitted an additional sheet of tabulations to the National Inventors Council, two of which were identical with the previously submitted tabulations and the other two of which were entitled "Indicator Flight Height from Earth" and "Amount of Feet As It Appears Center of the Telescopic Bomb Site."

On April 27, 1942, plaintiff forwarded two additional sheets to the National Inventors Council, one containing typewritten matter entitled "Specifications for Bomb Sight Equipment" and the other a geometric or schematic sketch consisting of a circle divided into four equal parts by radii and two additional radii adjacent to one of the original four.

140

Other undisputed facts will be set forth in the consideration of the issues of law. The questions of law posed by the complaint and raised by the motion for summary judgment are:

## Issues of Law

I. Whether this Court has jurisdiction under Title 10 U.S.C.A. § 310(i), (the Air Corps Act of 1926) to award "reasonable and entire compensation" and if so whether the complaint states or the other matters of record show facts which, if proved, would constitute a cause of action within the scope of said statute.

II. Whether this Court has jurisdiction under Title 35 U.S.C.A. § 42, the Secrecy or Voluntary Tender Act, to award "compensation" thereunder, and if so whether the complaint states, or the other matters of record show, facts which, if proved,

---

In those three letters plaintiff contended that his aforementioned disclosures would be helpful "to train pilots and gunners to be more accurate" and to "enable the pilots and trainees to bomb the objective more accurately."

This was plaintiff's entire disclosure to the National Inventors Council. On at least six different occasions, in reply to plaintiff's aforementioned letters and to subsequent letters of plaintiff and others in his behalf, the National Inventors Council rejected plaintiff's ideas as wholly unsuitable for use by any branch of the armed services, and stated that it had not and would not recommend any use thereof, and that if any use was made thereof it was entirely without the knowledge or recommendation of the Council and the Council was unable to discover sufficient novelty or merit in plaintiff's suggestions to justify further evaluation thereof by its experts.

Independently of his efforts to interest the National Inventors Council in his disclosures, plaintiff telephoned the Second Air Support Command, Army Air Base, at Birmingham, Alabama, on April 13, 1942, seeking unsuccessfully an interview to discuss his bomb sight indicating chart and followed that call with a similar request by letter of April 14, 1942, to which the Adjutant of the Command replied on April 15, 1942, stating "this headquarters has no information concerning the subject of your invention and would have no authority to discuss the matter" and suggested plaintiff contact the Sub-Depot, Maxwell Field, Alabama. On April 18, 1942, the Commanding Officer of the latter Field replied to plaintiff's request for an interview, dated April 16, 1942, stating that he would endeavor to contact plaintiff on his next trip to Birmingham. According to plaintiff's testimony, however, he was never contacted nor did he further pursue an interview with the authorities at Maxwell Field.

In 1943 or 1944 plaintiff allegedly saw a chart in an airplane of uncertain ownership at the Bechtel-McCone Airport of Alabama but plaintiff was unable to state whether it contained any one or more of the conversion figures included in his submission to the National Inventors council. Following this alleged discovery and his attempts to secure the foregoing interviews, plaintiff wrote a number of letters to the National Inventors Council and Members of Congress charging use of his ideas by the Air Force and demanding compensation for such use.

Early in 1948 plaintiff presented to defendant charges of alleged appropriation of his idea by the Army Air Force, basing his contention on War Department Field Manual FM 20-100 of September, 1947. In his deposition plaintiff specifically identified Figures 32 through 36 on pages 159–164 of this Manual as purportedly disclosing his idea. Figure 32 is a drawing of a physical embodiment of a "gap calibrator" and Figures 33 through 36 disclose a series of illustrative ground maps upon which are superimposed illustrative flight and sight courses. These disclosures do not reveal any parallel tables of numbers in any respect corresponding or comparable to plaintiff's submissions to the National Inventors Council in 1942 nor did plaintiff's submissions disclose any physical embodiment, or otherwise, of a gap calibrator.

United States Patents Nos. 2,880 of 1842, 289,401 of 1883 and 1,363,370 of 1920, placed of record by defendant, all of which expired prior to plaintiff's alleged conception in 1933, reveal, from the face thereof every feature of the gap calibrator illustrated in Figure 32 of the above-identified Field Manual.

In reply to those charges and demands the National Inventors Council and Air Force officials repeatedly and consistently denied that any use was made of plaintiff's ideas and reiterated the previous conclusions that they contained no novelty or utility in so far as the Army Air Force was concerned and that there was no evidence of a contractual relationship with plaintiff or other support to "justify payment by the Government" of plaintiff's claim.

would constitute a cause of action embraced within the scope of Section 42 of the aforesaid Secrecy Act.

III. Whether the Tucker Act, Title 28 U.S.C.A. § 41(20), confers jurisdiction upon this Court to award "reasonable and entire compensation" or "compensation," respectively, under the aforesaid sections of the Air Corps and Secrecy Acts, and independently thereof whether the complaint states, or the other matters of record show, facts which, if proved, would constitute a cause of action embraced within the scope of sub-section (20) of the aforesaid Tucker Act per se.

IV. Whether the complaint states, or the other matters of record show, facts which, if proved, would constitute any cause of action upon which any relief can be granted against the sovereign, the United States of America, by this Court under any other Act.

#### The Air Corps Act—Issue I

Section 310(i) of Title 10 U.S.C.A.[2] popularly titled the "Air Corps Act of July 2, 1926," as amended, is one of the three specifically designated acts under which plaintiff brought this suit.

In so far as I am advised, this is the first suit sought to be maintained in a District Court under the above quoted section of the Air Corps Act. In fact, only two previous actions based on this section have been decided to date, both in the Court of Claims. In each of those cases the Court of Claims sustained the Government's demurrer.[3] I am informed that a third case is now before the Court of Claims on a similar demurrer.

As italicized in the quoted section of the Air Corps Act, suit may be maintained only for uncompensated manufacture and use by or for the United States of "designs * * * relating to aircraft or any components thereof".

In the present suit plaintiff's claim is based upon alleged use of aeronautical accessories consisting of an alleged "invention, device, plan, means or method for bomb sight indicating chart for aircraft."

In this same plaintiff's earlier suit in the Court of Claims involving different subject matter consisting of parachutes, and predicated upon Section 310(i) of the Air Corps Act, Fulmer v. United States, supra, the Court of Claims held [77 F.Supp. 929]:

"Parachutes may be regarded as aeronautical accessories, but these were not included in the designs mentioned in section 10(i)[4] * * * The history of the Air Corps Act shows that in the enactment of section 10(i) Congress was dealing with aircraft and constituent elements or parts thereof * * * It seems obvious that if Congress had intended to include designs for 'aeronautical accessories' in section 10 (i), in addition to 'components' of aircraft, it would have expressly so stated * * *."

In the only other decisions involving Section 310(i) of the Air Corps Act, i. e., Mamlin et al v. United States, supra, plaintiff sued thereon for alleged wrongful use of a safety appliance for fighting aircraft fires. With respect thereto, the Court of Claims held [77 F.Supp. 932]:

"It appears that Congress had in mind a design or designs relating to a new type

---

[2] "Any person, firm, or corporation that shall complain that his, their, or its *designs* hereafter developed *relating to aircraft or any components thereof* are used or manufactured by or for any department of the Government without just compensation from either the Government or any other source, may within four years from the date of such use file suit *in the Court of Claims* for the recovery of his *reasonable and entire compensation* for such use and manufacture after July 2, 1926." (Italics added.)

[3] Fulmer v. United States, 77 F.Supp. 927, 111 Ct.Cl. 591; Mamlin et al. v.

United States, 77 F.Supp. 930, 111 Ct. Cl. 596 (*certiorari denied December 13, 1948*, 335 U.S. 891, 69 S.Ct. 245,) upon the ground that the subjects matter involved were not such as could be brought within the scope of that for which the Act permits suits against the United States.

[4] Section 10(i) in this quotation has reference to that section of the Act itself, while section 310(i) heretofore referred to has reference to the United States Code Annotated citation of the same section.

of aircraft or to improved designs for one or more features of a particular type or types of aircraft or to one or more of the components thereof * * * As we have said, Section 10(i) was dealing with aircraft and essential elements or parts thereof, and there is a well-recognized distinction between aircraft and components thereof and accessories therefor. *An aeronautical accessory is not an essential or necessary element or part of an airplane.* An accessory is an article or device which may accompany a complete airplane and contribute in a secondary way to the convenience or effective use of the aircraft but which is not essential."

The subject matter of the present suit clearly does not come within the scope of the terms of Section 310(i) of the Air Corps Act and the intent of the Act as interpreted by the Court of Claims. The Act and the rule of the Court of Claims obviously exclude aircraft accessories such as "a bomb sight indicating chart." Plaintiff himself excluded the subject matter of this action from said section by his own admissions in his discovery deposition.[5]

While it is apparent on the facts that the subject matter of this action does not come within the scope of Section 310(i) of the Air Corps Act and that plaintiff's action, in this respect, fails for want of jurisdiction of the subject matter, I am not prepared to concede jurisdiction of this Court to decide that issue.

In so far as the United States has waived its sovereign immunity from suit for tort in the foregoing section of the Air Corps Act, it has consented to be sued therefor only "in the Court of Claims" and, by the terms of the Act, the Court of Claims is the only Court upon which jurisdiction has been conferred to award "reasonable and entire compensation" thereunder. Had Congress included a minimum amount of $10,000 there might have been an inference that the district courts have concurrent jurisdiction up to that amount.[6] However, this is not the situation, and by the terms of that section the Court of Claims was vested with exclusive jurisdiction of such suits and to award the specified judgment, without limitation as to amount.

The Court of Claims entertained jurisdiction, of course, in the Fulmer and Mamlin cases but the question of its exclusive jurisdiction was not in issue nor discussed by way of obiter or judicial dicta. Decisions dealing with comparable statutes having provisions identical with Section 310(i) of the Air Corps Act are illuminating, although it seems clear enough to me that the terms of said Act plainly confine jurisdiction exclusively to the Court of Claims.

By way of analogy then, the dominant act under which the sovereign has consented to be sued for the infringement of patents, the Act of June 25, 1910, as amended July 1, 1918, Title 35 U.S.C.A. § 68, or Revised Title 28 U.S.C.A. § 1498, provides that the remedy of the patent owner shall be by suit against the United States "in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture." These are the *exact* words employed in the here concerned section of the Air Corps Act. This phrase of the 1910–1918 Act has been construed in a considerable number of decisions by District and Circuit Courts, the Court of Claims, and the Supreme Court. All have uniformly held that the phrase in question gives the Court of Claims *exclusive* jurisdiction to render

[5] He testified, at pages 78–79 of his deposition herein, that his invention was not connected with an airplane but "with the bomb sight mechanism" and further that "it is not a necessary element to make the airplane fly." On page 80 of his deposition, plaintiff testified again that his invention "was not necessary to make it fly" but was necessary "in order to carry out its [military] mission." As to the latter it is pointed out that many accessories are necessary to complete a military mission, including the pilot, but it cannot be said that such necessity converts accessories into components or constituent elements of the aircraft.

[6] Compare the Royalty Adjustment Act of 1942, 35 U.S.C.A. §§ 89–96 where in Section 90 it is provided that suit may be filed under certain conditions "against the United States in the Court of Claims, or in the District Courts of the United States insofar as such courts may have concurrent jurisdiction with the Court of Claims * * *."

judgments against the United States under such a provision.[7]

A contention that District Courts have jurisdiction concurrently with the Court of Claims under the aforesaid section of the Air Corps Act, may possibly be urged on basis of the decisions in Van Meter v. United States, 2 Cir., 47 F.2d 192; Luellen v. Baldwin Locomotive Works, D.C., E.D. Pa., 11 F.2d 390; and Northill Co. v. Danforth, D.C., N.D.Calif., 51 F.Supp. 928, involving the 1910–1918 Act. It is true, of course, that the District Courts and Circuit Courts entertained jurisdiction in those cases, but only because of exceptional circumstances or for limited purposes not present in the instant suit. In the Van Meter case the United States consented to be sued in the District Court under the 1910–1918 Act through the medium of a *special Act of Congress*. In the Luellen case, not a direct suit against the United States, the District Court retained jurisdiction of only so much of the claim as was based on infringement occurring prior to the Act. With respect to alleged infringement after the Act (as here), it held that [11 F.2d 392] "plaintiff's remedy for infringement by manufacture after that date is by suit against the United States in the Court of Claims." In the Northill case, likewise not a direct suit against the Government, the District Court found that 99.41% of the alleged infringement was by reason of sales to the Government but since .59% was based on commercial sales it retained jurisdiction as *to the latter portion only* since that involved no liability on the part of the sovereign. The United States, of course, was not a party to the

further proceedings in either of the latter cases.

In its decision in Sperry Gyroscope Co. v. Arma Engineering Co., 271 U.S. 232, 46 S.Ct. 505, 70 L.Ed. 922, the Supreme Court held that the District Court had jurisdiction under the 1910–1918 Act only for the purpose of determining whether it had jurisdiction. In other words, the District Court in that instance was found to have jurisdiction for the purpose of determining whether or not plaintiff had a cause of action based on any claim other than infringement by or for the United States. There is no record of the disposition on remand of the Sperry case, but it goes without saying that, had the District Court found thereafter that plaintiff had a cause of action under the 1910–1918 Act, it would, under settled law, have been compelled to dismiss the suit upon the ground that the Court of Claims had exclusive jurisdiction. The District Court for the Southern District of West Virginia followed this course in Tinnerman Products v. Adel Precision Products Corp., 62 F.Supp. 348. No instance has been found where any District Court has awarded judgment under the 1910–1918 Act against the United States for "reasonable and entire compensation" for the unauthorized manufacture, use and sale of inventions covered by patents of the United States, except for the Van Meter special act case.

The latter group of decisions, like the decision in the Identification case, supra, as well as those cited in footnote 7, confirm defendant's position here that this Court has no jurisdiction to award "reasonable and entire compensation" under a statute

---

[7] A concise and pertinent holding on this portion of the 1910–1918 Act appears in Identification Devices, Inc. v. United States, 74 App.D.C. 26, 121 F. 2d 895, 896, where the United States Court of Appeals for the District of Columbia said, in reversing a judgment of the District Court erroneously assuming jurisdiction:

"The suit * * * is against the United States. Its consent to be sued is essential to jurisdiction. The statute has given consent to suit in the Court of Claims. It is 'for the recovery of his reasonable *and entire* compensation for such use * * *.' This clearly shows that the remedy is exclusive. Conse-

quently the District Court was without jurisdiction."

Other decisions to a like effect are: Pierce v. Submarine Signal Co., D.C., D. of Mass., 25 F.Supp. 862; Hazeltine Corp. v. General Electric Co., D.C., D. of Mass., 19 F.Supp. 898; Broome v. Hardie-Tynes Mfg. Co., 5 Cir., 92 F.2d 886; Marconi Wireless Telegraph Co. v. Kilbourne & Clark Mfg. Co., D.C., W.D. Wash., 239 F. 328; 9 Cir., 265 F. 644; Crozier v. Krupp, 224 U.S. 290, 32 S.Ct. 438, 56 L.Ed. 771; Western Electric Co. v. Hammond, 1 Cir., 135 F.2d 283; Pollen v. Ford Instrument Co., 2 Cir., 108 F.2d 762.

or section of the United States Code, such as Section 310(i) of the Air Corps Act, which provides for suit against the United States "in the Court of Claims for the recovery of his reasonable and entire compensation".

The Court of Claims has itself passed in like fashion upon the same portion of the 1910–1918 Act and has been upheld therein by the Supreme Court.[8]

■ The foregoing judicial construction of the identical jurisdictional language reinforces my conclusion that this Court is without jurisdiction to render judgment against the United States for "reasonable and entire compensation" under Section 310(i) of the Air Corps Act. Accordingly, defendant's motion for summary judgment, as to this issue, is sustained on that basis alone. This Court has no jurisdiction to determine whether the subject matter comes within the scope of the Act.

The Secrecy or Voluntary Tender Act
—Issue II

Section 42 of Title 35 U.S.C.A.[9] is the second of the three provisions of the Code under which plaintiff seeks to maintain this suit.

As italicized in the quoted portion of Section 42, there are two fundamental conditions precedent to suit thereunder. First, the grant of a patent on an application therefor must have been withheld by order of the Commissioner of Patents (for safety or defense purposes) and second, a suit cannot be maintained until "he ultimately receives a patent."

Without more, the absence of either of these factors provides a complete defense to an action under Section 42. The Court of Claims has so held in a number of decisions.[10]

Plaintiff admitted that he had no patent application at any time,[11] hence no Secrecy Order of the Commissioner of Patents could have been made (indeed plaintiff does not even so allege); and no patent was issued to plaintiff, upon which jurisdiction under the Act depends.

Plaintiff has therefore admitted himself out of Court in so far as any cause of action under the Secrecy or Voluntary Tender Act is concerned, all irrespective of the dominant premise of whether the Congress has not conferred on this Court jurisdiction under the statute.

Again, a word of caution is necessary. The foregoing observation is not intended to arrogate to this Court jurisdiction of the asserted cause of action. Such jurisdiction is neither assumed nor conceded.[12]

---

[8] In Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 343, 48 S. Ct. 194, 197, 72 L.Ed. 303, originating from 58 Ct.Cl. 433, the Supreme Court ruled that the purpose of the phrase in question was "to limit" suits under the 1910–1918 Act to actions "against the United States *in the Court of Claims*".

[9] "*When an. applicant whose patent is withheld* as herein provided and who faithfully obeys *the order of the Commissioner of Patents* above referred to shall tender his invention to the Government of the United States for its use, he shall, *if and when he ultimately receives a patent*, have the right to sue *for compensation in the Court of Claims*, such right to compensation to begin from the date of the use of the invention by the Government. * * *"

[10] Allgrunn v. United States, 67 Ct.Cl. 1; Rodman Chem. Co. v. United States, 65 Ct.Cl. 39; Barlow v. United States, 82 .Ct.Cl. 360; Martin v. United States, 84 Ct.Cl. 41; Gathmann v. United States, 71 Ct.Cl. 680; Ordnance Engr. Corp. v. United States, 68 Ct.Cl. 301; Curtiss v.

United States, 75 Ct.Cl. 286; Zeidler v. United States, 61 Ct.Cl. 537.

[11] In plaintiff's deposition of record in this case, he testified at page 38: "I never did attempt to have it patented," i. e., the alleged invention of a device, plan, means or method for bomb sight indicating chart for aircraft upon which this suit is based. Plaintiff again confirmed that admission at page 79 of his deposition.

[12] The Government in its brief in support of its motion stated:
"The full extent to which the Government can concede that this Court has jurisdiction under Title 35 U.S.C. Section 42 [35 U.S.C.A. § 42], is limited to a determination by this Court that it does not have concurrent jurisdiction with the Court of Claims to award compensation thereunder, just as is the situation discussed above with reference to Title 10 U.S.C. Section 310(i) [10 U.S.C.A. § 310(i)].
"It is not defendant's intention to be overly technical on this point, but it is believed to be a sound principle and or-

For such cause of action as is specified in Section 42 of Title 35 U.S.C.A. the United States has consented to be sued only "in the Court of Claims" and by the terms of that section the Court of Claims is the only court upon which jurisdiction has been conferred to award "compensation" if it finds that all conditions precedent have been performed and exist when the suit is brought.

In United States v. Pfitsch, 256 U.S. 547, 553, 41 S.Ct. 569, 571, 65 L.Ed. 1084, the Voluntary Tender or Secrecy Act, here under consideration, was not in issue but by way of analogy the Court listed that Act as one of a number of "statutes which provide for suits for compensation against the United States *only* in the Court of Claims."

The Voluntary Tender or Secrecy Act, like the Air Corps Act, is without reported judicial determination as to the jurisdiction of District Courts thereunder. While it has been the subject of litigation in a number of Court of Claims cases, the issues were confined to the essential jurisdiction of that tribunal. It is sufficient, by way of supporting analogy, to observe that all which was said above in connection with the Air Corps Act applies with equal force to the Secrecy Act.

■ It is thus concluded as a matter of law that this Court is without jurisdiction to award "compensation" under the Secrecy or Voluntary Tender Act and upon this basis defendant's Motion for Summary Judgment on this point is sustained. This Court is without juridiction to consider whether plaintiff has a cause of action justiciable under the Act in a proper court.

### The Tucker or General Jurisdiction Act—Issue III

The third cause of action alleged by plaintiff is stated to arise under Title 28 U.S.C.A. § 41, Sub-division (20) [now § 1346], the "Tucker" or "General Jurisdiction" Act. This sub-section, by its express terms, confers on the District Courts concurrent jurisdiction with the Court of Claims of suits against the United States, not exceeding $10,000, founded upon any contract, express or implied, with the United States.

■ Before considering whether plaintiff has alleged or shown facts or produced evidence which if proved would establish a contract of which this Court might have cognizance under the aforesaid sub-division (20), it may be conducive to an orderly consideration of the issues first to consider whether that sub-division lends any assistance in conferring jurisdiction upon this Court to render judgment for "reasonable and entire compensation" or "compensation" under the aforesaid sections of the Air Corps or Secrecy Acts, supra. I think not, and my contention is based upon such decisions as are next considered.

In the case of Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 45 S.Ct. 25, 26, 69 L.Ed. 190, the action was brought under the Dent Act, 40 Stat. 1272, 1273, 50 U.S.C.A. § 80 note. It was there urged that the District Court had jurisdiction by reason of the District Court's general concurrent jurisdiction with the Court of Claims. The Supreme Court rejected this contention.[13]

■ Suits against the United States can be maintained, of course, only by permis-

---

derly procedure to prevent an unauthorized judgment. By this procedure the Supreme Court's direction in Reid v. United States, 211 U.S. 529, 539, 29 S. Ct. 171, 53 L.Ed. 313, is followed. In that case plaintiff criticized the Government for raising the point of whether District Courts have, by reason of the general jurisdictional Act, concurrent jurisdiction with the Court of Claims under a special jurisdictional act designating the Court of Claims as the exclusive forum of remedy. As to that criticism the Court stated:

" 'The Courts are bound to take notice of the limits of their authority, and it is no part of the defendant's duty to

help in obtaining an unauthorized judgment * * *'."

[13] "By section 2 of the act [Dent Act] the Court of Claims is given jurisdiction on the petition of the claimant described in section 1 of the act to find and award fair and just compensation in such cases, if the claimant is not willing to accept the compensation offered by the Secretary of War. There is no other provision in the act for judicial action than this. This must be held to be an exclusive jurisdiction conferred upon the Court of Claims * * *. The District Court, therefore, was right in holding that it had no jurisdiction * * *."

sion of the United States, and in the manner and subject to the restrictions, that the Congress may see fit to impose. Kawananokoa v. Polyblank, 205 U.S. 349, 353, 27 S.Ct. 526, 51 L. Ed. 834. The sovereign has given restricted permission for the maintenance of suits against it by special jurisdiction acts, as, for example, Section 301(i) of the Air Corps Act, and Section 42 of the Voluntary Tender Act. The general jurisdiction granted District Courts under the Tucker Act does not, however, give the permission required to maintain suits in such form under either of the former acts. Reid v. United States, 211 U.S. 529, 539, 29 S.Ct, 171, 53 L.Ed. 313.

Illustrative of the strict construction given to acts permitting suits against the United States is Yuhasz v. United States, 109 F.2d 467, where the Circuit Court of Appeals for the Seventh Circuit held that the Court of Claims had exclusive jurisdiction under the special NRA Act, 41 U.S.C. A. § 28 note, regardless of the general concurrent jurisdiction of District Courts under Section 41(20) of the Tucker Act.

Therefore, while the Tucker Act confers limited jurisdiction in the District Courts of some classes of actions against the United States, it does not extend to jurisdiction of suits where, as under the Air Corps Act and the Secrecy Act, jurisdiction is by statute expressly granted only to the Court of Claims.

Now the question arises as to whether plaintiff, under the allegations of the complaint,[14] has a cause of action, per se, under Section 41(20) of the Tucker Act.

In an effort to determine whether a contract, oral or otherwise, had in fact been entered into, plaintiff was interrogated in the aforementioned deposition as to whether he had "used due diligence to find all papers which have any bearing on this case whatsoever" and in reply stated: "I have." He was also asked whether he knew "of any other evidence, that you might rely upon at the trial, which you have not produced here at this time in support of your claim," to which he replied that he might rely upon the testimony of his family to corroborate his working on the idea but knew of nothing else. Thereafter plaintiff was asked "upon which piece of evidence which has been offered do you fix that date," i.e., March 18, 1942, the alleged date of the alleged oral contract set forth in the complaint. To this inquiry plaintiff testified it would be the letter of March 16, 1942, to National Inventors Council and that it is the letter which he alleges to be the contract entered into with representatives of the Government on or about March 18, 1942.

Again on pages 97 and 98 of the Fulmer deposition, plaintiff was interrogated and replied, after a review of the allegations of the complaint, as follows:

"Q. Now, who made that agreement with you on the part of the United States? A. Well, in other words, the people that [I] have already testified to, the National Inventors Council and Mr. Brown and others.

"Q. By what means did they make that agreement, was it an oral agreement or in writing? A. In writing, the correspondence to them, other than the telephone call that I made to Mr. Brown.

From the resume of plaintiff's testimony set forth above, plaintiff assured defendant that the "oral agreement" of "March 18, 1942" alleged in his complaint is "in writing" and consists of his letter of March 16, 1942, to the National Inventors Council which carried the original of the face of Defendant's Exhibit 2, Id., and no more according to the affidavit of Mr. John C. Green, of record. The face of Exhibit 2 contains the two parallel columns of numbers converting miles per hour to feet per second referred to above in the statement of facts.

---

14 The complaint alleges:

"* * * plaintiff avers that on, to-wit, March 18, 1942, plaintiff entered into an oral agreement with officers, agents, servants or employees of the defendant * * * [whereby plaintiff disclosed his] device, plan, means or method for bomb sight indicating chart for aircraft * * * [to said representatives in consideration for a promise from said representatives] that said disclosure would be treated in confidence, that such disclosure would not be revealed to the public or otherwise be appropriated, that defendant would pay to the plaintiff for the use of said device, invention, means or method the reasonable value of same."

On the other hand, allowing plaintiff's alleged cause of action to stand on the broadest base which his deposition will support, we find that plaintiff has limited his alleged contract to (1) the documentary evidence of record, and (2) the alleged telephonic conversation with Captain R. L. Brown, the Adjutant at Headquarters, Second Air Support Command, Birmingham, Alabama, on or about April 13, 1942.

As is pointed out under the heading of "Undisputed Facts", supra, plaintiff submitted two so-called charts or columns of numbers, a geometric or diagrammatic sketch, and a so-called specification to the National Inventors Council in March and April of 1942 and stated in connection with the submission of the first of those items—

"With reference to compensation, I will supervise and install this idea, *in the event you are interested,* on a salary and expense basis."

The National Inventors Council repeatedly rejected plaintiff's offer and time after time, in six successive letters, advised plaintiff that his ideas had been carefully analyzed by the experts of the Council skilled in the fields to which the ideas ostensibly pertained; that they were unable to discover any novelty or merit in the suggestions; that none of the material could be recommended for utilization in the war effort; that the same was not suitable for use in the armed service; that they were unable to use any of his ideas; that existing equipment was far superior; and that they had not recommended use of his ideas to the Army Air Force or otherwise.

To spell out an oral or written contract from these transactions is impossible. The offer, if any, was met by repeated unconditional rejection.

Aside from these occurrences between plaintiff and the National Inventors Council, plaintiff telephoned and wrote to the Second Air Support Command and the Sub-Depot of Maxwell Field, asking for an interview to discuss his ideas which he had submitted to the National Inventors Council. Neither of these efforts materialized even though the Commanding Officer of Maxwell Field stated he would endeavor to contact plaintiff when next in Birmingham.

There is not a single requisite element of contract, oral or written, inferrable from these facts, even when construed with the greatest of liberality to plaintiff. At most there is indicated repeated efforts of plaintiff to interest certain agencies of the Government in the use of his "ideas" and like repeated refusals of the agencies to accept such offers. In short, by any standard, plaintiff fails to allege any "meeting of the minds" and the evidence of record establishes that none occurred.

Independently of either of the foregoing so-called "negotiations" with the National Inventors Council and the Alabama Air Bases, plaintiff allegedly saw a chart in an airplane at the Bechtel-McCone Airport in Alabama which he says incorporated his idea showing in parallel columns a series of numbers converting "miles per hour" to "feet per second," etc. Plaintiff could not fix the time when he allegedly saw such a chart nor could he state whether it was in a government-owned plane. He could not recall whether the alleged chart had any numbers identical with any numbers on his chart or whether the tables were for the conversion of the same factors specified in his general submission to the National Inventors Council.

After allegedly seeing a chart of some sort in a plane of uncertain ownership, plaintiff wrote to Senator Lister Hill asking that he investigate the alleged use of his "idea" by the Army Air Force. In reply to Senator Hill's inquiry, Colonel Warren S. Edge, Chief of the Legislative Service, Headquarters Army Air Force, wrote on June 26, 1944, that he had made a careful investigation and found that the charts submitted to the National Inventors Council contained no inventive features or novelty; that plaintiff had submitted no description of any bomb sight mechanism; that there was no contract between Fulmer and the Government or any dealings which could be construed as a contractual arrangement; that his ideas were not applicable to Army Air Force equipment; that his ideas could not be understood *and were not used* by the Army Air Force; and that plaintiff's submission, at best, was merely stated in terms of results which he would like to have accomplished.

■ From plaintiff's allegations, admissions, and facts of record it is shown that no contract between plaintiff and the Army Air Force existed or exists, and that no cause of action in contract, express or implied, arose or could have arisen.[15]

Four years later, on January 17, 1948, plaintiff wrote to the Legal Division of the Army Air Force charging that the disclosures in Figures 32–36 on pages 159–164 of War Department Field Manual FM 20-100 of September, 1947, was an appropriation of his disclosure to the National Inventors Council and the Army Air Force in 1942–43. This charge was supplemented by subsequent letters to the Army Air Force and in a letter to Senator John Sparkman. In reply to these charges Colonel Robert E. L. Eaton, Directorate of Public Relations for the Army Air Force, wrote to Senator Sparkman, for communication to plaintiff, denying that the Army Air Force had made any use of plaintiff's suggestions and stating that "Evidence presented and facts established have failed to support Mr. Fulmer's claims or justify payment by the Government."

Plaintiff's submissions to the National Inventors Council did not include illustrative ground maps nor the flight or sight courses illustrated in Figures 33–36 of the Field Manual nor do those figures incorporate anything revealed by plaintiff's submissions. There is no dispute of fact in these conclusions since plaintiff, when specifically interrogated thereon, was unable to establish any similarity. With respect to the Gap Calibrator illustrated in Figure 32 of the Manual, plaintiff was unable to point out any similarity between it and the geometric sketch which he forwarded to the National Inventors Council. He was asked to describe the gap calibrator of Figure 32 of the Manual and his description thereof, which is indeed not needed for an understanding of the device, brought that structure clearly

within the disclosures of the ancient expired U.S. Patents considered above.

In the case of Brown v. Ford Motor Co., D. C., 57 F.Supp. 825, it was held that when extrinsic evidence is not needed to explain the terms of a patent·the Court may from a mere comparison of the invention claimed in the patent with an accused device determine the question of infringement like the construction of any other writing. Indeed in the instant case this ·Court needs no expert testimony to decide that the calibrator of Figure 32 of the Manual is disclosed by the aforementioned patents of record here.

These facts fail to establish a contract and the failure of the evidence to establish use coupled with the evidence which refutes such use of plaintiff's ideas by the Army Air Force or any other branch of the Government, negative any implied contract stemming from use and further negative any legal obligation to compensate plaintiff for his voluntary efforts no matter how noble or patriotic they may have been in endeavoring to contribute to the defense of the Nation.

There is still another allegation in the complaint which must be disposed of in order to pass upon all issues presented under the Tucker Act, namely the alleged breach of a contract ·between plaintiff and representatives of the Government with respect to secrecy and compensation. Plaintiff alleged that in consideration for the revelation of his ideas said representatives of the Government "promised that said disclosure would be treated in confidence" and "not revealed to the public or otherwise be appropriated" and "that defendant would pay for the use of said device, invention, means or method the reasonable value of same."

These allegations must fall by reason of plaintiff's admissions in his aforementioned deposition.[16]

---

[15] In *Patton v. United States*, 75 F. Supp. 470, 472, 110 Ct.Cl. 195, 201, the Court stated:

"The fact that plaintiff endeavored to establish a contract relationship with the Government is not enough to give this court jurisdiction to hear and determine his claim."

[16] After testifying that he had no evidence to support his allegations other than defendant's Exhibits 1–8 and plaintiff's Exhibits 1–7 for identification, plaintiff was asked, at page 117 of his deposition, "does any of the documentary evidence reveal that any Government Agent ever agreed to keep your disclo-

As to the alleged promise to compensate plaintiff for his suggestions, plaintiff's negativing admissions are equally conclusive.[17]

Even should it be held, contrary to the undisputed facts, that the evidence of record, if proved, would establish a contract, such contract would not be binding upon the Government under the established doctrine so clearly announced by the Supreme Court in Filor v. United States, 9 Wall. 45, 76 U.S. 45, 49, 19 L.Ed. 549. It is an undisputable fact, as indicated by the affidavits of record, that the representatives of the Government with whom plaintiff allegedly made the so-called contract were not and are not contracting officers and were and are without specific commission authorizing them to enter into contracts for or on behalf of the Government.

"Their unauthorized acts cannot estop the Government from insisting upon their invalidity, however beneficial they may have proved to the United States," as was held in the Filor decision above.[18] This point need be labored no further since the admissions of record on the part of plaintiff demonstrate that his "idea" was worthless and was not utilized by the Government.

Should plaintiff, as a last resort, limit his suit to compensation for alleged unauthorized use, regardless of a provable contract, then such action must be dismissed for the simple reason that in the absence of a contract there is no statutory obligation upon the Government to pay compensation for the manufacture and/or use of an invention prior to the granting of a patent therefor principally because

---

sure pertaining to the bomb sight chart, etcetera, secret, if you should disclose it to them?" To this plaintiff answered "No."

[17] The following is quoted from pages 98 and 99 of such deposition:

"Q. Do you at this time have any of that correspondence from any officer or agent or servant or employee of the United States in which he or she promised that you would receive compensation for the use of the bombsight indicating chart if it were used? A. I don't have anything like that, but I requested them that I be compensated for my work.

"Q. Is that the request which appears in the letter to the National Inventors Council, dated March 16, which is a part of Defendant's Exhibit 5? A. That's right.

*       *       *       *       *

"Q. Now, Mr. Fulmer, did you ever in any other way indicate to any person in the employ of the United States that you expected compensation for your bomb sight indicating chart? A. Well, in other words, I probably said something to Mr. Brown in the call when I talked to him over the telephone.

*       *       *       *       *

"Q. Did any person in the employ of the United States ever tell you that you would be compensated for the bomb sight indicating chart if it were used? A. Well, in other words, no one said, other than rumors, some different people connected with the Government said that they would compensate any one for their inventions or ideas, as it was a rule to pay people for their ideas."

[18] Similarly in Wright v. United States, 86 Ct.Cl. 290, Certiorari denied 305 U.

S. 609, 59 S.Ct. 68, 83 L.Ed. 387, the Court stated, 86 Ct.Cl. at page 299, that

"* * * while it is true that Col. Anderson and Major Holcombe had authority to write the letter * * * there is no evidence that either of these officers had authority to make or ratify contracts. * * * The mere offer by Wright to some official of the United States of the use by the latter of his inventions certainly cannot be held to be a contract binding the United States to pay him any amount unless the offer is *definitely* accepted by the United States by some person *duly authorized* to act for it in that regard."

Also, in United States v. New York Rayon Importing. Co., 329 U.S. 654, 660, 67 S.Ct. 601, 604, 91 L.Ed. 577, the Court held:

"It has long been settled that officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision by Congress."

It should also be noted that, as held in Baltimore & Ohio Railroad v. United States, 261 U.S. 592, 596, 43 S.Ct. 425, 67 L.Ed. 816, a representative of one branch of the Government, such as the National Inventors Council, cannot, with binding effect upon the Government, enter into an agreement as to matters relating to an entirely different branch, such as the Army Air Force, without commissioned authority therefor. Such authority was not alleged in the instant complaint, nor shown by plaintiff's deposition, and is shown to the contrary by the affidavits of record.

the inventor has no exclusive property right [19] (except such right as may be created or conferred by the Air Corps and Secrecy Acts).

### The Federal Tort Claims Act—
### Issue IV

The fourth issue presented by the Government's Motion for Summary Judgment is whether plaintiff has alleged or whether the record reveals any cause of action against the United States under any statute other than stated in the complaint.

■ Regardless of the limits of the complaint as filed, it is the duty of the Court to look to the facts to see whether there are any grounds for an amended complaint as though it were already amended to conform.[20]

■ This rule was followed in the instant case and at the time the motion was before the Court, I knew of no act under which the undisputed facts herein would constitute a cause of action against the sovereign. The statutory field was explored during the oral arguments of February 25, 1949. The only question raised, however, was whether an action might lie under the Federal Tort Claims Act of August 2, 1946, 28 U.S.C.A. §§ 931–946, or as reenacted by the Act of June 25, 1948, 28 U.S.C.A. §§ 2671–2680, either as a tort per se or on the basis of unjust enrichment. No other conceivable statutory ground was advanced by either counsel or the Court. To afford all concerned an opportunity to consider the Federal Tort Claims Act, the decree which the Court was prepared to enter forthwith on Issues I, II and III was temporarily withheld and the Court is now satisfied to grant the Motion for Summary Judgment as to Issue IV upon the ground that the undisputed facts, if proved, would not constitute a cause of action against the United States under any known statute, including the Federal Tort Claims Act, which is excluded for the following reasons:

The allegations of the complaint, plaintiff's answers in his deposition, and the other evidence of record are all directed to the sole question of whether the facts establish a contract, express or implied, written or oral. A tort action is, of course, antagonistic thereto. If the facts establish a tort then no contract exists. See Isham v. United States, 76 Ct.Cl. 1, 38. Irrespective of this, under the pertinent section of the Federal Tort Claims Act as it existed at the time of filing the complaint herein, 28 U.S.C.A. § 931, suit may be maintained against the United States "for money * * * on account of damage to or loss of property or on account of personal injury or death . * * *." There are other provisions which might be referred to as precluding an action under this Act on the facts herein but I think the above-quoted portion is sufficiently demonstrative.

■ The undisputed facts, repeatedly stated by the plaintiff in his deposition to be all of the facts and accepted by him as such here at the time of this motion, are that there has been no "damage to or loss of" his property. Plaintiff has stated that his so-called property is an "invention." The nature of the property in an invention is of course incorporeal and for a private person to "be liable to the claimant," as the Government is under this Act, for "damage

---

[19] In Gayler et al. v. Wilder, 10 How. 477, 51 U.S. 477, 492, 13 L.Ed. 504, the Supreme Court held:

"The inventor of a new and useful improvement certainly has no exclusive right to it until he obtains a patent. This right is created by the patent and no suit can be maintained by the inventor against any one for using it before the patent is issued."

In Dable Grain Shovel Co. v. Flint, 137 U.S. 41, 43, 11 S.Ct. 8, 34 L.Ed. 618, the Supreme Court reiterated the above holding. See also: Patterson v. Kentucky, 97 U.S. 501, 507, 24 L.Ed. 1115; Fletcher v. United States, 11 Ct.Cl. 748, 758; Robbins v. United States, 65 F.Supp. 462, 106 Ct.Cl. 278, 280; Patton v. United States, 75 F.Supp. 470, 110 Ct. Cl. 195, 202.

[20] " '* * * every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.' Accordingly a complaint is sufficient if it sets forth facts which show that the plaintiff is entitled to any relief which the court can grant." Keiser v. Walsh, 73 App.D.C. 167, 118 F.2d 13, 14. This holding was relied upon by the Circuit Court for the Fifth Circuit in Hawkins v. Frick-Reid Supply Corp., 154 F.2d 88, 89.

to or loss" of his incorporeal property, the facts must first establish the existence of such property before it can be determined whether it has been damaged.

Under the decision by the Supreme Court in Gayler et al. v. Wilder, 10 How. 477, 51 U.S. 477, 493, 13 L.Ed. 504, an unpatented invention or idea is but an inchoate right and "the inventor * * * certainly has no exclusive right to it until he obtains a patent * * * and no suit can be maintained * * * for using it before the patent is issued." [21] (An exception is noted again as to rights derived under the Air Corps and Secrecy Acts.)

■■■■ Aside from this lack of property right, the undisputed facts would fail, if proved, to establish use by the Government, tortiously or otherwise and therefore there could have been no damage to plaintiff's property even if he had had a property right therein. This, of course, disposes of the question of unjust enrichment. Furthermore, "one who is unjustly enriched at the expense of another may be required for that reason alone to make restitution. * * * But, in order to establish unjust enrichment, it is not enough merely to show one's retention of a benefit. The retention must also be unjust." Bailis v. Reconstruction Finance Corp., 3 Cir.; 128 F.2d 857, 859. Again, the undisputed facts, if proved, would not establish the receipt of a benefit by the Government much less an unjust retention thereof.

■■■ As has been previously stated, the sovereign has given restricted permission for the maintenance of suits against it and the extent to which it may be held liable for the use of inventions by such special jurisdiction acts as the Air Corps Act and the Secrecy or Voluntary Tender Act herein considered and in the Patent Act of June 25, 1910, as amended July 1, 1918, 35 U.S.C.A. § 68, and as reenacted June 25, 1948, 28 U.S.C.A. § 1498. While the Federal Tort Claims Act does not, in terms, either include or exclude claims arising out of the alleged use of unpatented inventions, its very silence on the subject efficiently excludes such claims. It is settled law that where Congress over a period of time through many enactments has dealt with a particular subject matter in such a manner as to create a complete and comprehensive system of law for dealing therewith, subsequent or even prior statutes of general application, which might otherwise apply, are held to be inapplicable to the special subject matter.[22]

Therefore, it follows that defendant's Motion for Summary Judgment should be granted and judgment should be entered dismissing the complaint, and such a judgment will be entered simultaneously with the filing of this opinion.

---

[21] This principle has been repeatedly reiterated by the Supreme Court. For example in Brown v. Duchesne, 19 How. 183, 60 U.S. 183, 195, 15 L.Ed. 595, it held that "the right of property which a patentee has in his invention * * * is derived altogether from * * * statutory provisions; and this court has always held that an inventor has no right of property in his invention, upon which he can maintain a suit, unless he obtains a patent for it * * *." In Marsh v. Nichols, Shepherd & Co., 128 U.S. 605, 612, 9 S.Ct. 168, 170, 32 L.Ed. 538, the Supreme Court held that patents "may be said to create a property interest" in an invention and "until then there is no power over its use, which is one of the elements of a right of property in anything capable of ownership. * * * 'The monopoly did not exist at common law * * *.'"

To like effect are the Supreme Court's decisions in Dable Grain Shovel Co. v. Flint, 137 U.S. 41, 43, 11 S.Ct. 8, 34 L. Ed. 618, and Patterson v. Kentucky, 97 U.S. 501, 507, 24 L.Ed. 1115. See also Fletcher v. United States, 11 Ct.Cl. 748, 758; Robbins v. United States, 65 F. Supp. 462, 106 Ct.Cl. 278, 280; and Patton v. United States, 75 F.Supp. 470, 110 Ct.Cl. 195, 202.

[22] United States v. Barnes, 222 U.S. 513, 520, 32 S.Ct. 117, 56 L.Ed. 291; United States v. Sweet, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473; Ozawa v. United States, 260 U.S. 178, 193, 194, 43 S. Ct. 65, 67 L.Ed. 199; United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 396, 54 S.Ct. 443, 78 L.Ed. 859; State of Missouri v. Ross, 299 U.S. 72, 76, 57 S.Ct. 60, 81 L.Ed. 46; United States et al. v. American Trucking Associations, 310 U.S. 534, 544, 60 S.Ct. 1059, 84 L.Ed. 1345; Townsend v. Little, 109 U.S. 504, 512, 3 S.Ct. 357, 27 L. Ed. 1012; United States v. Fixico, 10 Cir., 115 F.2d 389, 393; Iriarte et al. v. United States, 1 Cir., 157 F.2d 105, 108, 167 A.L.R. 494; Cook County Nat. Bank v. United States, 107 U.S. 445, 450–451, 2 S.Ct. 561, 27 L.Ed. 537.